IN THE UNITED STATES DISTRICT COURT  RECEIVED
MIDDLE DISTRICT EASTERN DIVISION

FRONTIER BANK, a Georgia
state banking corporation,

      Plaintiff,

vs.

R & L TRUCKING COMPANY, INC.,
an Alabama corporation, SRM FINANCIAL,
INC., an Alabama corporation, and
STANLEY R. MELTON, IV, an individual,

      Defendants.

2005 SEP 21  P 3: 41

CASE NO. ~~CV 2005~~
3:05cv901-F

## COMPLAINT

### I - Parties

1.      Plaintiff is Frontier Bank, a Georgia state banking corporation, having its principal offices at 401 Vernon Street, LaGrange, Georgia 30240, hereinafter referred to as "Bank" or "Plaintiff".

2.      Defendant is R & L Trucking Company, Inc., an Alabama corporation having its principal place of business at 2405 South Uniroyal Road, Opelika, Alabama, and hereinafter referred to as "R & L Trucking" or "Defendant".

3.      Defendant is SRM Financial, Inc., an Alabama corporation, having its principal place of business at 2405 South Uniroyal Road, Opelika, Alabama 36804, and hereinafter referred to as "SRM Financial" or "Defendant".

4.      Defendant is Stanley R. Melton, IV, an individual over the age of nineteen (19) years who is believed to reside at 3705 Flintwood Lane, Opelika, Alabama 36803, and whose business address is 2405 South Uniroyal Road, Opelika, Alabama 36804.

1

Defendant Stanley R. Melton, IV, shall hereinafter be referred to as "Melton" or "Defendant".

## II - Jurisdiction and Venue

5.      Pursuant to Title 28 §1332 USC, federal district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. Plaintiff is a Georgia state banking corporation havings its principal place of business and its corporate headquarters in LaGrange, Georgia. All three (3) Defendants reside and/or have their domicile or principal place of business in Lee County, Alabama. Therefore, there is diversity of citizenship. The amount in controversy exceeds $75,000.00.

6.      Defendants either reside in, are domiciled in or have their principal place of business in Opelika, Alabama, which is located in Lee County, Alabama, and is a part of the State of Alabama located in the United States Middle District Eastern Division. Hence, venue is proper in the Eastern Division of the Court.

## III - Facts Common to All Counts

7.      Defendant, R & L Trucking, was organized and incorporated in Lee County, Alabama on June 5, 1968. (See Exhibit 1 attached hereto and made a part hereof). Based on the best information and belief, Defendant, Melton, is the president of and majority, if not sole stockholder in, that company. Defendant, Melton, makes day-to-day management decisions for R & L Trucking.

8.      Defendant, R & L Trucking, is primarily engaged in the trucking business, hauling dry van freight in its own equipment for hire, normally covering distances not to

exceed one thousand (1,000) miles.  At its zenith about two (2) years ago, R & L Trucking was operating twenty (20) or more tractor trailer rigs and generating revenues in excess of Sixty Thousand Dollars ($60,000.00) per week.

9.     Defendant, SRM Financial, Inc., was organized and incorporated in Lee County, Alabama on October 8, 1998.  (See Exhibit 2 attached hereto and made a part hereof).  Based on the best information and belief, Defendant, Melton, is the president of and majority, if not sole stockholder in, that company.  Defendant, Melton, makes day-to-day management decisions for SRM Financial.

10.    Defendant, Melton, owns the land and building located at 2405 South Uniroyal Road, Opelika, Alabama 36804, where R & L Trucking conducts its trucking business.  Defendant, Melton, leases the land and building to R & L Trucking.

11.    Defendant, Melton, is the principal, president, director and majority if not sole shareholder of R & L Trucking.

12.    A few years ago, Defendants R & L Trucking started conducting various banking business with Bank at its Auburn, Alabama branch.  This business included maintaining checking accounts at the bank, borrowing money on a secured basis, granting liens and mortgages and so forth.

13.    A few years ago, on approximately, to-wit: April 10, 2002, Bank made a commitment to loan Defendant, R & L Trucking up to a maximum of Five Hundred Thousand and 00/100 Dollars ($500,000.00) in the form of a "Line of Credit Facility".  A copy of the Loan Commitment Letter dated April 10, 2002 is attached hereto and made a part hereof as Exhibit 3.  A copy of the Promissory Note is attached hereto and made a part hereof as Exhibit 4.  By the terms of the Line of Credit Facility, Bank retained a

3

security interest, which Bank promptly and properly perfected, in the accounts receivable and contract rights of R & L Trucking.

14.     Pursuant to the terms of the said Line of Credit Facility, R & L Trucking was authorized to draw on its credit line "the lesser of 75% of the eligible accounts receivable of R & L Trucking or $500,000.00).

15.     Immediately after the Line of Credit Facility loan documents were executed and the loan was closed, R & L Trucking drew in excess of $400,000.00.  The Line of Credit Facility has maintained an outstanding balance of between $400,000.00 and $450,000.00 from the spring of 2002 to the present time.  The current unpaid principal balance of the loan is $349,120.90.  Additional amounts, including accrued and unpaid interest, late charges and attorney fees are also currently due.

16.     R & L Trucking was required to submit to Bank various financial information and documentation including, but not limited to, copies of computer printouts or other recapitulations of R & L Trucking's accounts receivable in order that officers or employees of the Bank could verify R & L Trucking remained within the agreed 75% formula on its draws against the Line of Credit Facility.  During most of the year 2005, officers and employees of Bank requested Melton, as president of R & L Trucking, submit account receivable reports, but R & L Trucking did not respond to these requests.  The loan officer at Bank in charge of the R & L Trucking loan was concerned about the financial condition of R & L Trucking because R & L trucking had given some of its drivers and other employees checks which were subsequently dishonored due to insufficient funds.  Some checks R & L Trucking gave to its suppliers or other creditors also had to be dishonored and returned for the same reason.

4

17.    After repeated demands for a current accounts receivable aging report were ignored, the loan officer at the Bank finally insisted that Melton submit a report.  On August 15, 2005, Melton submitted to Bank a report on receivables showing a total due R & L Trucking of less than $84,000.00.  Of this amount, approximately $47,000.00 was "current", $20,000.00 was between 16 and 25 days old and $10,000.00 was between 26 and 30 days old.  According to the contractual formula of the Line of Credit Facility, R & L Trucking should have only drawn approximately $63,000.00 on the Line of Credit Facility.  At that time, R & L owed Bank over $434,000.00 on the credit line loan meaning R & L Trucking was overdrawn on the Line of Credit Facility approximately $371,000.00.

18.    Upon further investigation, Bank has learned that R & L Trucking is currently operating only five (5) tractor trailer trucks for hire instead of running over twenty (20) trucks as it had done when the Line of Credit Facility was originally opened.

19.    Bank does not believe R & L Trucking is paying its creditors generally as its debts come due and that the company has become insolvent.

20.    Bank has heretofore made written demand upon R & L Trucking and Melton, as a personal guarantor of the R & L Trucking loan, to either (a) pay off the Bank's balance in full, (b) pay the balance down to a point R & L Trucking is within the agreed 75% formula, or (c) submit to Bank additional receivables or collateral to make up the current shortfall.  Neither R & L or Melton have done anything toward complying with these demands.

21.    Bank has deemed itself insecure based on the good faith determination of the current financial condition of R & L Trucking.

5

22.    R & L Trucking has committed numerous "events of default" under all off the loan documents, including but not limited to, failure to pay the August 29, 2005 payment due Bank on the Line of Credit Facility and by allowing a significant reduction in the Bank's accounts receivable collateral base.

23.    Quite sometime ago, on, to-wit: April 22, 2002, R & L Trucking requested Bank issue a Letter of Credit ("LC") in the total amount of $35,000.00 in favor of ComData Corporation, apparently so that truck drivers driving R & L Trucking equipment could get credit for gas, oil, repairs and other amounts in remote locations when the drivers were making trips with freight.  This LC was primarily secured by the pledge of a Certificate of Deposit ("CD"), which was purchased by Melton when he sold stock he had owned in EBA Bancshares, Inc.  The CD was in the original amount of $85,500.00 in the name of R & L Trucking Co., Inc. and was assigned Frontier Bank CD Number 600007688.

24.    For a long time after the LC was issued, ComData did not make any draw or demand on the LC.  Recently, however, ComData made a written demand for $19,247.48, which Bank honored.  Based on the deteriorating financial condition of R & L Trucking, and based upon the refusal of either R & L Trucking or Melton to cure the significant default under the Line of Credit Facility, Bank has cancelled the LC to ComData, and the Bank has exercised its common law, statutory and/or contractual rights of setoff or offset and cashed in the CD on September 20, 2005.  Bank received a total of $93,054.60, which it used first to pay off the balance due on the LC agreement of $19,530.97, and then applied the balance to reduce the Line of Credit Facility to its current balance reflected above.  The CD and all other collateral were cross pledged or "cross collateralized" by agreement so that

6

all collateral pledged for any of the three (3) debts owing by the Defendants were pledged to all loans or debt owing to the Bank.

25.    Defendant, Melton, executed a loan and real estate mortgage on April 22, 2002. A copy of the Promissory Note and recorded Real Estate Mortgage, which were part of the loan documents, are attached hereto and made a part hereof as Exhibits 5 and 6. This loan was renewed, extended and refinanced on November 29, 2004. (See Exhibit 7 attached hereto and made a part hereof).

26.    The Bank promptly and properly recorded the Mortgage in the office of the Judge of Probate of Lee County, Alabama to perfects its mortgage lien, which Bank maintains is a first priority lien on said real property.

27.    By prior agreement of the parties, Bank drafted the checking account of R & L Trucking for the rent and mortgage loan payment due Bank.  The mortgage from Melton includes an assignment of rents due on the mortgaged Premises.

28.    Recently, Melton, on behalf of R & L Trucking, gave Bank written notice that R & L Trucking was closing its checking account with Bank where this draft occurred.  See Exhibit 8 attached hereto and made a part hereof.  Furthermore, based on the best information and belief, the only money R & L Trucking was depositing to its checking account at Bank was the proceeds of accounts receivable collected by R & L Trucking, which were subject to the lien of the Bank.  The Bank is not aware of any income which R & L Trucking could earn that would not be subject to its perfected security interest.

29.    It appears that Melton will not have the ability or the financial resources to pay Bank the mortgage payments due under the mortgage loan since he apparently will no longer be receiving rent payments from R & L Trucking.

7

30.     Defendant, SRM Financial, executed a Corporate Guaranty Agreement, the terms of which obligated SRM Financial to pay any and all debts of either R & L Trucking or Melton.  A copy of said Corporate Guaranty Agreement is attached hereto and made a part hereof as Exhibit 9.

31.     The "events of default" of all loan documents create a default in all loans based on a default in any single loan.  Furthermore, the financial affairs of defendants R & L Trucking, SRM Financial and Melton are so intricately tied together and interdependent, that a financial collapse by R & L Trucking would result in similar financial collapses for SRM Financial and Melton.  A review of Melton's personal financial statements submitted to the Bank pursuant to the loan requests and loan covenants, clearly reveals that most of his personal net worth is from the values he placed on his stock ownership in R & L Trucking and SRM Financial.

32.     A significant part of the income received by Melton is from rent paid by R & L Trucking pursuant to the lease on the property located at 2405 South Uniroyal Road, Opelika, Alabama.  Accordingly, if R & L Trucking is unable to pay rent, Melton has significantly reduced revenues and income.  Coupled with the significant debt Melton owes Bank, the Bank would allege he has become insolvent.

33.     Based on the best information and belief, Melton and his wife are involved in a divorce proceeding pending in the Lee County Circuit Court.  Melton's personal financial condition could be further complicated, and his personal net worth could be further reduced as a result of a settlement or adverse verdict in that proceeding.

34.     Currently, Melton, as prime obligor, and  SRM Financial, as guarantor, owe Bank an unpaid principal balance of $213,123.63 plus accrued and unpaid interest,

8

attorney fees and other charges on the real estate mortgage loan. At this time, Bank has not commenced foreclosure of its mortgage lien but reserves the right to do so.

35.    In recent days, Bank has exercised its statutory, common law and/or contractual right of setoff or offset and/or its rights under the security agreement connected with the Line of Credit Facility to setoff approximately $11,619.01 in the checking account of R & L Trucking. This money was traced to account receivable payments by GE, which were direct-deposited into the account. Accordingly, Bank had both a security interest lien and a banker's setoff lien in these funds.

36.    After the offset or setoff of the CD and the checking accounts, Bank is owed approximately $562,000.00 by the three (3) defendants collectively on the two (2) remaining loans. As collateral for said debt, Bank has a first priority mortgage on the land and building, which was appraised for $265,000.00 in October of 2004 (a copy of said appraisal is attached hereto and made a part hereof as Exhibit 10), and whatever is still owing R & L Trucking on accounts receivable, which as of August 15, 2005 was only approximately $84,000.00.

37.    Based on the alarming and significant reduction in the Bank's collateral and based on R & L Trucking being out of formula so severely on its accounts receivable base, Bank gave R & L Trucking and Melton written notice of default and demanded that R & L Trucking turn over to the Bank all accounts receivable documentation. This demand was made on September 8, 2005. A copy of said written notice is attached hereto and made a part hereof as Exhibit 11. Bank has terminated the right of R & L Trucking to receive and spend account receivable collections and desires to notify all account receivable debtors

9

to pay Bank directly pursuant to the provisions of the Alabama Uniform Commercial Code and the security agreement.

38.     In response, R & L Trucking gave Bank notice it was closing its checking account at Bank and has totally ignored Bank's demands regarding accounts receivable collections.  From aught that appears R & L Trucking has and is continuing to collect account receivable payments and spend those monies in derogation of the Bank's rights.

39.     The limited information Bank has regarding R & L Trucking's accounts receivables does not include the full address of each account debtor.  Hence, Bank does not presently have sufficient information to give each account receivable debtor written notice to pay Bank directly.

40.     Without the assistance of this Court to help Bank enforce its security interest lien in the accounts receivable of R & L Trucking, Bank will suffer further irreparable injury and harm while R & L Trucking continues to collect and thereafter spend this money.  Bank does not believe R & L Trucking is replacing accounts receivable debt as quickly as R & L Trucking is collecting and spending receivable balances.

41.     Both loans to Bank are in default.

42.     Defendants Melton and SRM Financial have individually and personally guaranteed both loans to Bank.

### Count I

### Breach of Contract by Defendants,
### R & L Trucking, SRM Financial and Melton

43.     Plaintiff adopts the allegations of Paragraphs 1 through 42 set forth above as if fully set forth herein and further alleges as follows:

44.    Defendant, R & L Trucking, executed a Promissory Note, a Security Agreement, a Loan Commitment Agreement and other contractual documents and agreements, all of which were part of a loan made by Bank to Defendant, R & L Trucking, in April of 2002.  All of the loan documents are too voluminous to attach to the Complaint but will be made available upon request.  The primary loan documents, including a copy of the Promissory Note, the Security Agreement, and the Loan Commitment Letter are attached hereto and made a part hereof as Exhibits 4, 6 and 3 respectively.  A copy of the Assignment of Accounts Receivables is also attached hereto and made a part hereof as Exhibit 12.

45.    Defendants, Melton and SRM Financial, have guaranteed the full repayment of this debt.

46.    Defendant, R & L Trucking, has breached the terms of the Promissory Note, the Loan Commitment Agreement, the Security Agreement and other contractual provisions of the loan documents in multiple ways including, but not limited to failure to make payments in accordance with the Promissory Note, failure to keep a proper level of accounts receivable due R & L Trucking to justify the amount drawn on said Line of Credit Facility, a significant diminution in the collateral base securing said loan and based on a good faith belief of Bank that it has deemed itself insecure.

47.    Currently, R & L Trucking owes bank the following amounts:

| A. | Unpaid principal balance | | $349,120.90 |
|---|---|---|---|
| B. | Accrued and unpaid interest through 9/20/05 | $ | 4,638.27 |
| C. | Accrued and unpaid late charges | $ | 200.00 |
| | Total | | $353,959.17 |

48.     The Promissory Note, Guaranty Agreement and other loan documents contain a provision allowing this Court to award Bank a reasonable attorney fee in the event of default and the referral by Bank of the debt represented by the loan documents to an attorney for collection.  Bank has retained the law firm of Parnell & Crum, P.A. of Montgomery, Alabama for purposes of collecting this debt.  Bank would allege that a fee equal to fifteen percent (15%) of the unpaid balance as outlined above would be fair and reasonable and would be in accordance with commercial practice in this area.  Accordingly, Bank would ask the Court to award Bank an attorney fee of $53,093.87 in addition to the amounts set forth above.

49.     Defendants, Melton and SRM Financial, are personally and/or individually responsible and liable for paying said debt based on their execution of the loan documents and/or guaranty agreements.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff respectfully request that this Court enter judgment against Defendants, R & L Trucking, Inc., SRM Financial, Inc. and Stanley R. Melton, IV in the total amount of $407,053.04, plus additional interest accruing on or after September 20, 2005, plus the costs of this action.

### Count II

### Breach of Contract by Defendants,
### SRM Financial, R & L Trucking and Melton

50.     Plaintiff adopts the allegations of Paragraphs 1 through 49 set forth above as if fully set forth herein and further alleges as follows:

51.     Defendant, Melton, executed a Promissory Note and a Real Estate

Mortgage, as well as other contractual documents and agreements, all of which were part of a loan made by Bank to Defendant, Melton, in April of 2002. All of the loan documents are too voluminous to attach to the Complaint but will be made available upon request. The primary loan documents, including a copy of the Promissory Note and the recorded Real Estate Mortgage are attached hereto and made a part hereof as Exhibits 5 and 6.

52.     Both R & L Trucking and SRM Financial executed Corporate Guaranty Agreements agreeing to contractually be obligated to pay this debt in the event Defendant, Melton, did not do so.

53.     Defendant, Melton, has breached the terms of the Promissory Note and the Real Estate Mortgage, as well as other contractual provisions of the loan documents in multiple ways including, but not limited to failure to make payments in accordance with the Promissory Note.

54.     Currently, Melton owes bank the following amounts:

| A. | Unpaid principal balance | $213,123.63 |
| B. | Accrued and unpaid interest through 9/20/05 | $ 692.66 |
| C. | Accrued and unpaid late charges | $ 0.00 |
| | Total | $213,816.29 |

55.     A Promissory Note and other loan documents contain a provision allowing this Court to award Bank a reasonable attorney fee in the event of default and the referral by Bank of the debt represented by the loan documents to an attorney for collection. Bank has retained the law firm of Parnell & Crum, P.A. of Montgomery, Alabama for purposes of collecting this debt. Bank would allege that a fee equal to fifteen percent (15%) of the unpaid balance as outlined above would be fair and reasonable and would be in

accordance with commercial practice in this area. Accordingly, Bank would ask the Court to award Bank an attorney fee of $32,072.44 in addition to the amounts set forth above.

56.    Defendants, R & L Trucking and SRM Financial, are personally responsible and liable for paying said debt based on his execution of the loan documents and/or Guaranty Agreements.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff respectfully request that this Court enter judgment against Defendants, Stanley R. Melton, IV, R & L Trucking Co., Inc. And SRM Financial, Inc. in the total amount of $245,888.73, plus additional interest accruing on or after September 20, 2005, plus the costs of this action.

## Count III

### Injunctive Relief

57.    Plaintiff adopts the allegations of Paragraphs 1 through 56 set forth above as if fully set forth herein and further alleges as follows:

58.    The Loan Commitment Agreement, the Security Agreement and other loan documents required Defendant, R & L Trucking, to borrow no more than 75% of its eligible accounts receivable or $500,000.00, whichever was less. The last information that Bank had concerning the total amount of eligible accounts receivable held by Defendant, R & L Trucking, was on August 15, 2005, at which time the eligible accounts receivable totaled slightly less than $84,000.00.

59.    After applying credits for offsets as set forth above, currently Bank is owed a total of $349,120.90 on the Line of Credit Facility. Accordingly, Defendant, R & L Trucking, is grossly "out of formula" on the accounts receivable loan.

14

60.    Bank has made written demand upon R & L Trucking and its principal to either (a) pay off the entire loan balance, (b) reduce the loan balance so the balance is within the loan commitment formula which would require the loan balance being paid down to approximately $63,000.00 assuming R & L Trucking's receivables are still at a level of approximately $84,000.00, or (c) produce additional accounts receivable or other collateral to properly secure the loan in accordance with the original agreement.  Neither Defendant, R & L Trucking, nor Defendant Melton have complied with this written demand.

61.    Bank is genuinely and justifiably concerned that Defendant, R & L Trucking, will continue to collect receivables and not pay the proceeds of those collections over to Bank to reduce the large outstanding balance due Bank at this time.

62.    Bank has demanded that Defendant, R & L Trucking, turn over to Bank accounts receivable records including computer printouts, ledgers, Bills of Lading or other documents that would allow Bank to give account debtors notice to make direct payments to the bank in accordance with the Bank's rights under the Security Agreement and the Uniform Commercial Code as adopted by Alabama.  Defendant R & L Trucking has refused to comply with this request, and Bank is without adequate remedy without the assistance of this Court to enforce its rights under the Security Agreement.

63.    Plaintiff would ask this Court to order Defendant, R & L Trucking, and/or its principal/Defendant, Melton, to perform or refrain from the following conduct:

A.    To enjoin R & L Trucking from further collecting and spending any account receivable due R & L Trucking that it collects and to direct R & L Trucking and/or Melton to pay over said account receivable payments to bank or to the Clerk of this Court as the Court directs;

15

B.  To order Defendant, R & L Trucking and/or Melton, to immediately turn over to Bank all account receivable documentation including, but not limited to, computer printouts, ledger cards, invoices, Bills of Lading, bills or statements of amounts due and any and all other documentation or information concerning each and every account receivable that will allow the Bank to identify the account debtor, have its complete address and know the total amount that R & L Trucking claims that each account debtor owes at this time so Bank can give immediate notice to said account debtor to tender all payments to Bank; and

C.  To immediately turn over to Bank any account receivable amount which R & L Trucking has collected in the last ten (10) days and to make a full and complete accounting to Bank and this Court of all such amounts, including what Defendant R & L Trucking has done with said money if it is no longer in its possession.

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff respectfully asks the Court to grant Bank a temporary restraining order and injunctive relief as set forth above and to grant Bank whatever additional or further relief to which it may be entitled.

PARNELL & CRUM, P.A.
Attorneys for Plaintiff

By: _____
CHARLES N. PARNELL, III
ATTORNEY CODE: PAR016

OF COUNSEL:
PARNELL & CRUM, P.A.
PO BOX 2189
MONTGOMERY, ALABAMA   36102-2189
334/832-4200

16