# MORTGAGE AND SECURITY AGREEMENT

| **Mortgagor** (last name first): | **Mortgagee:** |
|---|---|
| Melton, Stanley R., IV | Frontier National Bank COPY |
| | Auburn Office |
| P O Box 2445 | P O Box 2829 |
| Mailing Address | Mailing Address |
| Opelika    AL    36803-2445 | Auburn    AL    36831 |
| City    State    Zip | City    State    Zip |

This instrument is also a financing statement filed as a fixture filing pursuant to Ala. Code 7-9-402(6), and should be indexed in the index of financing statements under the names of Mortgagor, as debtor, and Mortgagee, as secured party.

STATE OF ALABAMA

COUNTY OF Lee

THIS MORTGAGE AND SECURITY AGREEMENT (herein referred to as the "Mortgage") is made and entered into this day by and between Mortgagor and Mortgagee.

KNOW ALL MEN BY THESE PRESENTS: THAT WHEREAS
Stanley R. Melton IV

has become indebted to Mortgagee in the principal sum of ---Two Hundred Forty-Five Thousand and No/100ths---

Dollars ($ 245,000.00 ) evidenced by his promissory note of even date herewith in favor of Mortgagee.

WHEREAS, Mortgagor desires to secure prompt payment of (a) the indebtedness described above according to its terms and any extensions, modifications or renewals thereof, (b) any additional and future advances with interest thereon that Mortgagee may make to Mortgagor as provided in Paragraph 2, (c) any other indebtedness that Mortgagor may now or hereafter owe to Mortgagee as provided in Paragraph 3, (d) any advances with interest that Mortgagee may make to protect the property herein conveyed as provided in Paragraph 5, 6, 7 and 8, and (e) any advance with interest that Mortgagee may make for attorneys' fees and other expenses as provided in Paragraph 19 (all being referred to herein as the "Indebtedness").

NOW THEREFORE, in consideration of the Indebtedness,

Stanley R. Melton, IV

does hereby grant, bargain, sell and convey unto Mortgagee all of Mortgagor's right, title, and interest in and to and the real property described below situated in the County of Lee, State of Alabama.

See attached Exhibit "A"

Together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; and all water, water rights, watercourses and ditch rights relating to the real property (all being herein referred to as the "Property"). Notwithstanding any provision in this Mortgage or in any other agreement with Mortgagee, Mortgagee shall not have a nonpossessory security interest in, and the Property shall not include, any household goods (as defined in Federal Reserve Board Regulation AA, Subpart B), unless the household goods are identified in a security instrument and are acquired as a result of a purchase money obligation. Such household goods shall only secure said purchase money obligation (including any renewal or refinancing thereof).

TO HAVE AND TO HOLD the same and every part thereof unto Mortgagee, its successors and assigns forever.

If Mortgagor shall pay all Indebtedness promptly when due and shall perform all covenants made by Mortgagor, then this Mortgage shall be void and of no effect. If Mortgagor shall be in default as provided in Paragraph 12, then, in that event, the entire Indebtedness, together with all interest accrued thereon, shall, at the option of Mortgagee, be and become at once due and payable without notice to Mortgagor, and Mortgagee, at its option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

(a)    Mortgagee shall have all rights and remedies of a secured party under the Uniform Commercial Code to the extent any of the Property constitutes fixtures or other personal property.

(b)    Mortgagee shall have the right, without notice to Mortgagor, to take possession of the Property and collect all rents as provided in Paragraph 9 and apply the net proceeds, over and above Mortgagee's costs, against the Indebtedness. In furtherance of this right, Mortgagee may require any tenant or other user of the Property to make payments of rent or use fees directly to Mortgagee. If the rents are collected by Mortgagee, then Mortgagor irrevocably designates Mortgagee as Mortgagor's attorney-in-fact to endorse instruments received in payment thereof in the name of Mortgagor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Mortgagee in response to Mortgagee's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Mortgagee may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

(c)    Mortgagee shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Mortgagee's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Mortgagee shall not disqualify a person from serving as a receiver.



(d) Mortgagee shall have the right to obtain a judicial decree foreclosing Mortgagor's interest in the Property.

(e) Mortgagee shall be authorized to take possession of the Property, and, with or without taking such possession, after giving notice of the time, place and terms of sale, together with a description of the Property to be sold, by publication once a week for three (3) successive weeks in some newspaper published in the county or counties in which the Property to be sold is located, to sell the Property (or such part or parts thereof as Mortgagee may from time to time elect to sell) in front of the front or main door of the courthouse of the county or division of the county in which the Property to be sold, or a substantial and material part thereof, is located, at public outcry, to the highest bidder for cash. If the Property to be sold under this Mortgage is located in more than one county, publication shall be made in all counties where the Property to be sold is located. If no newspaper is published in any county in which any Property to be sold is located, the notice shall be published in a newspaper published in an adjoining county for three (3) successive weeks. The sale shall be held between the hours of 11:00 a.m. and 4:00 p.m. on the day designated for the exercise of the power of sale under this Mortgage. Mortgagee may bid at any sale had under the terms of this Mortgage and may purchase the Property if the highest bidder therefor. Mortgagor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, Mortgagee shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales.

(f) If permitted by applicable law, Mortgagee may obtain a judgment for any deficiency remaining in the indebtedness due to Mortgagee after application of all amounts received from the exercise of the rights provided in this Mortgage.

(g) If Mortgagor remains in possession of the Property after the Property is sold as provided above or Mortgagee otherwise becomes entitled to possession of the Property upon default of Mortgagor, Mortgagor shall become a tenant at sufferance of Mortgagee or the purchaser of the Property and shall, at Mortgagee's option, either (a) pay a reasonable rental for the use of the Property, or (b) vacate the Property immediately upon the demand of Mortgagee.

From the proceeds of any sale of the Property, Mortgagee shall first pay all costs of the sale (including but not limited to reasonable attorneys' fee incurred by Mortgagee in connection therewith or in connection with any proceeding whatsoever, whether bankruptcy or otherwise, seeking to enjoin or stay the foreclosure of this Mortgage, or otherwise challenging the right of Mortgagee to foreclose this Mortgage); then amounts due on other liens and mortgages having priority over this Mortgage; then the Indebtedness due to Mortgagee; and then the balance, if any, to Mortgagor or to whomever then appears of record to be the owner of Mortgagor's interest in the Property, including but not limited to, any subordinate lienholder.

IT IS AGREED that this conveyance is made subject to the covenants, stipulations and conditions set forth below which shall be binding upon all parties hereto.

1. Mortgagor is lawfully seized in fee simple and possessed of the Property and has a good right to convey the same as aforesaid. The Property is free and clear of all encumbrances, easements, and restrictions not herein specifically mentioned or set forth in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Mortgagee in connection with this Mortgage. Mortgagor will warrant and forever defend the title to the Property against the claims of all persons whomsoever.

2. This Mortgage shall also secure all future and additional advances that Mortgagee may make to Mortgagor from time to time upon the security herein conveyed. Such advances shall be optional with Mortgagee and shall be on such terms as to amount, maturity and rate of interest as may be mutually agreeable to both Mortgagor and Mortgagee. Any such advance may be made to any one of the Mortgagors should there be more than one, and if so made, shall be secured by this Mortgage to the same extent as if made to all Mortgagors.

3. This Mortgage shall also secure any and all other indebtedness of Mortgagor due to Mortgagee with interest thereon as specified, or of any of the Mortgagors should there be more than one, whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter rising at any time before cancellation of this Mortgage. Such Indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise.

4. Notwithstanding the foregoing, if any disclosure required by 12 C.F.R. §§ 226.15, 226.19(b) or 226.23, or 24 C.F.R. §§ 2500.6, 3500.7, or 3500.10, or any successor or regulations, has not been timely provided in connection with one or more loans, credit extensions or obligations of Mortgagor, or any other person whose obligations are secured hereby, then the security interest in the Property granted hereby shall not secure the obligation or obligations for which the required disclosure was not given.

5. Mortgagor shall keep all buildings, improvements and fixtures on the real property herein conveyed insured against fire, all hazards included within the term "extended coverage," flood in areas designated by the U.S. Department of Housing and Urban Development as being subject to overflow, and such other hazards as Mortgagee may reasonably required in an amount sufficient to avoid application of any coinsurance clause. All policies shall be written by reliable insurance companies acceptable to Mortgagee, shall include a standard mortgagee's clause in favor of Mortgagee providing at least 10 days notice to Mortgagee of cancellation, and shall be delivered to Mortgagee. Mortgagor shall promptly pay when due all premiums charged for such insurance and shall furnish Mortgagee the premium receipts for inspection. Upon Mortgagor's failure to pay the premiums, Mortgagee shall have the right, but not the obligation, to pay such premiums or obtain single interest insurance for the sole benefit of Mortgagee (with such coverages as determined by Mortgagee in its sole discretion), and/or to hold the Mortgagor in default and exercise its rights as a secured creditor and may make use of any other remedy available under this Mortgage or any other agreements with the Mortgagor, including, but not limited to, foreclosure of the Property or any other collateral that secures the Indebtedness. In the event of a loss covered by the insurance in force, Mortgagor shall promptly notify Mortgagee, who may make proof of loss if timely proof is not made by Mortgagor. All loss payments shall be made directly to Mortgagee as loss payee, who may either apply the proceeds to the repair or restoration of the damaged improvements or to the Indebtedness, or release such proceeds in whole or in part to Mortgagor.

6. Mortgagor shall pay all taxes and assessments, general or special, levied against the Property or upon the interest of Mortgagee therein, during the term of this Mortgage before such taxes or assessments become delinquent, and shall furnish Mortgagee the tax receipts for inspection. Should Mortgagor fail to pay all taxes and assessments when due, Mortgagee shall have the right, but not the obligation, to make these payments.

7. Mortgagor shall keep the Property in good repair and shall not permit or commit waste, impairment or deterioration thereof. Mortgagor shall use the Property for lawful purposes only. Mortgagee may make or arrange to be made entries upon and inspections of the Property after first giving Mortgagor notice prior to any inspection specifying a just cause related to Mortgagee's interest in the Property. Mortgagee shall have the right, but not the obligation, to cause needed repairs to be made to the Property after first affording Mortgagor a reasonable opportunity (not to exceed 30 days) to make the repairs. Any inspection or repair shall be for the benefit of Mortgagee only.

Should the purpose of the primary indebtedness for which this Mortgage is given as security be for construction of improvements on the real property herein conveyed. Mortgagee shall have the right to make or arrange to be made entries upon the Property and inspections of the construction in progress, which shall be for Mortgagee's sole benefit. Should Mortgagee determine that Mortgagor is failing to perform such construction in a timely and satisfactory manner, Mortgagee shall have the right, but not the obligation, to take charge of and proceed with the construction at the expense of Mortgagor after first affording Mortgagor a reasonable opportunity (not to exceed 30 days) to continue the construction in a manner agreeable to Mortgagee.

8. Any sums advanced by Mortgagee for insurance, taxes, repairs or construction as provided in Paragraphs 5, 6 and 7 shall be secured by this Mortgage as advances made to protect the Property and shall be payable by Mortgagor to Mortgagee, with interest at the rate specified in the instrument representing the primary indebtedness, within thirty days following written demand for payment sent by Mortgagee to Mortgagor by certified mail. Receipts for insurance premiums, taxes and repair or construction costs for which Mortgagee has made payment shall serve as conclusive evidence thereof.

9. As additional security, Mortgagor hereby grants a security interest in and assigns to Mortgagee all of Mortgagee's right, title and interest in and to all leases of the Property and all rents (defined to include all present and future rents, revenues, income, issues, royalties and other benefits) accruing on the Property. Mortgagor shall have the right to collect and retain any rents as long as Mortgagor is not in default as provided in Paragraph 12. In the event of default, Mortgagee in person, by an agent or by a judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and collect the rents. All rents so collected shall be applied first to the cost of managing the Property and collecting the rents, including fees for a receiver and an attorney, commissions to rental agents, repairs and other necessary related expenses, and then to payments on the Indebtedness.

10. If all or any part of the Property, or an interest therein, is sold or transferred by Mortgagor, excluding (a) the creation of a lien subordinate to this Mortgage for which Mortgagee has given its written consent, (b) a transfer by devise, by descent or by operation of law upon the death of a joint owner or (c) the grant of a leasehold interest of three years or less not containing an option to purchase, Mortgagee may declare all the Indebtedness to be immediately due and payable.

11. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Mortgagee may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Mortgagee in connection with the condemnation. If any proceeding in condemnation is filed, Mortgagor shall promptly notify Mortgagee in writing, and Mortgagor shall promptly take such steps as may be necessary to defend the action and obtain the award. Mortgagor may be the nominal party in such proceeding, but Mortgagee shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Mortgagor will deliver or cause to be delivered to Mortgagor such instruments as may be requested by it from time to time to permit such participation.

12. Mortgagor shall be in default under the provisions of this Mortgage at the option of Mortgagee if (a) Mortgagor shall fail to comply with any of Mortgagor's covenants or obligations contained herein, (b) Mortgagor shall fail to pay any of the Indebtedness, or any installment thereof or interest thereon, as such Indebtedness, installment or interest shall become due under contractual agreement or by acceleration, (c) Mortgagor becomes bankrupt or insolvent or is placed in receivership, (d) Mortgagor shall, if a corporation, a partnership or other legal entity, be dissolved voluntarily or involuntarily, (e) any warranty, representation or statement made or furnished to Mortgagee by or on behalf of Mortgagor under this Mortgage or related documents is false or misleading in any material respect, either now or at the time made or furnished, (f) this Mortgage or any related document(s) ceases to be in full force and effect (including failure of any security instrument to create a valid and perfected security interest or lien) at any time and for any reason, (g) Mortgagor breaches the terms of any other agreement between Mortgagor and Mortgagee, including without limitation, any agreement concerning any indebtedness or other obligation of Mortgagor to Mortgagee, whether existing now or later, and does not remedy the breach within any grace period provided therein, or (h) Mortgagee in good faith deems itself insecure and its prospect of repayment seriously impaired.

13. This instrument shall constitute a security agreement to the extent any of the Property constitutes fixtures, accounts, chattel paper, documents, equipment, farm products, general intangibles, instruments, inventory, minerals, timber, investment property, deposit accounts, commercial tort claims of Borrower, letter-of-credit rights, and proceeds and products of any of the foregoing collateral, and Mortgagee shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time. Upon request by Mortgagee, Mortgagor shall execute financing statements and take whatever other action is requested by Mortgagee to perfect and continue Mortgagee's security interest in that part of the Property that constitutes personal property. In addition to recording this Mortgage in the real property records, Mortgagee may, at any time and without further authorization from Mortgagor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Mortgagor shall reimburse Mortgagee for all expenses incurred in perfecting or continuing this security interest. Upon default, Mortgagor shall assemble that part of the Property that constitutes personal property in a manner and at a place reasonably convenient to Mortgagor and Mortgagee and make it available to Mortgagee within three (3) days after receipt of written demand from Mortgagor. Notice of the time and place of any public sale or of the time after which any private sale or other intended disposition is to be made shall be deemed reasonable if given at least 10 days before the time of the sale or disposition. The mailing addresses of Mortgagor and Mortgagee, from which information concerning the security interest granted herein may be obtained (each as required by the Uniform Commercial Code), are as stated on the first page of this Mortgage.

14. At any time, and from time to time, upon request of Mortgagee, Mortgagor will make, execute and deliver, or will cause to be made executed and delivered, to Mortgagee or to Mortgagee's designee, and when requested by Mortgagee, caused to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Mortgagee may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Mortgagee, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (a) the obligations of Mortgagor under this Mortgage or the instruments evidencing the Indebtedness, and (b) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Mortgagor. Unless prohibited by law or agreed to the contrary by Mortgagee in writing, Mortgagor shall reimburse Mortgagee for all costs and expenses incurred in connection with the matters referred to in this paragraph. If Mortgagor fails to do any of the things referred to in this paragraph, Mortgagee may do so for and in the name of Mortgagor and at Mortgagor's expense. For such purposes, Mortgagor hereby irrevocably appoints Mortgagee as Mortgagor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Mortgagee's sole opinion, to accomplish the matters referred to above.

15. Mortgagor shall notify Mortgagee at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Mortgagor will upon request of Mortgagee furnish to Mortgagee advance assurances satisfactory to Mortgagee that Mortgagor can and will pay the cost of such improvements. Any statement or claim of lien filed under applicable law shall be satisfied by Mortgagor or bonded to the satisfaction of Mortgagee within 14 days after filing.

16. Each privilege, option or remedy provided in this Mortgage to Mortgagee is distinct from every other privilege, option or remedy contained herein or in any related document, or afforded by law or equity, and may be exercised independently, concurrently, cumulatively or successively by Mortgagee or by any other owner or holder of the Indebtedness. Mortgagee shall not be deemed to have waived any rights under this Mortgage (or under the related documents) unless such waiver is in writing and signed by Mortgagee. No delay or omission on the part of the Mortgagee in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Mortgage shall not constitute a waiver of or prejudice the party's right otherwise to demand strict compliance with that provision or any other provision. No prior waiver by Mortgagee, nor any course of dealing between Mortgagor and Mortgagee, shall constitute a waiver of any of Mortgagee's rights or any of Mortgagor's obligations as to any future transactions. Whenever consent by Mortgagee is required in this Mortgage, the granting of such consent by Mortgagee in any instance shall not constitute continuing consent to subsequent instances where such consent is required.

17. The words "Mortgagor" or "Mortgagee" shall each embrace one individual, two or more individuals, a corporation, a partnership or an unincorporated association or other legal entity, depending on the recital herein of the parties to this Mortgage. The covenants herein contained shall bind, and the benefits herein provided shall inure to, the respective legal or personal representatives, successors or assigns of the parties hereto subject to the provisions of Paragraph 10. If there be more than one Mortgagor, then Mortgagor's obligation shall be joint and several. Whenever in this Mortgage the context so requires, the singular shall include the plural and the plural the singular. Notices required herein from Mortgagee to Mortgagor shall be sent to the address of Mortgagor shown in this Mortgage.

18. Mortgagor covenants and agrees that the Mortgagor (a) has not stored and shall not store (except in compliance with all federal, state and local statutes, laws, ordinances, rules, regulations and common law now or hereafter in effect, and all amendments thereto, relating to the protection of the health of living organisms for the environment (collectively, "Environmental Requirements")) and has not disposed and shall not dispose of any Hazardous Substances (as hereinafter defined) on the Property, (b) has not transported or arranged for the transportation of and shall not transport or arrange for the transportation of any Hazardous Substances, and (c) has not suffered or permitted, and shall not suffer or permit, any owner, lessee, tenant, invitee, occupant or operator of the Property or any other persons to do any of the foregoing.

Mortgagor covenants and agrees to maintain the Property at all times (a) free of any Hazardous Substance (except in compliance with all Environmental Requirements) and (b) in compliance with all Environmental Requirements.

Mortgagor agrees promptly: (a) to notify Mortgagee in writing of any change in the nature or extent of Hazardous Substances maintained on or with respect to the Property, (b) to transmit to Mortgagee copies of any citations, orders, notices or other material governmental communications received with respect to Hazardous Substances upon, about or beneath the Property or the violation or breach of any Environmental Requirements, (c) to observe and comply with any and all Environmental Requirements relating to the use, maintenance and disposal of Hazardous Substances or transportation, generation and disposal of Hazardous Substances, (d) to pay, perform or otherwise satisfy any fine, charge, penalty, fee, damage, order, judgment, decree or imposition related thereto which, if unpaid, would constitute a lien on the Property, unless (i) the validity thereof shall be contested diligently and in good faith by appropriate proceedings and with counsel reasonably satisfactory to Mortgagee and (ii) so long as Mortgagor shall at all times have deposited with Mortgagee, or posted a bond satisfactory to Mortgagee in a sum equal to the amount necessary (in the reasonable discretion of Mortgagee) to comply with such order or directive (including, but not limited to, the amount of any fine, penalty, interest or costs that may become due thereon by reason of or during such contest); provided, however, that payment in full with respect to such fine, charge, penalty, fee, damage, order, judgment, decree or imposition shall be made not less than twenty (20) days before the first date upon which the Property, or any portion thereof, may be seized and sold in satisfaction thereof, and (e) to take all appropriate response actions, including any removal or remedial actions necessary in order for the Property to be or remain in compliance with all Environmental Requirements in the event of a release, emission, discharge or disposal of any Hazardous Substances in, on, under or from the Property, (f) upon the request of Mortgagee, to permit Mortgagee, including its officers, agents, employees, contractors and representatives, to enter and inspect the Property for purposes of conducting an environmental assessment, (g) upon the request of Mortgagee, and at the Mortgagor's expense, to cause to be prepared for the Property such site assessment reports, including, without limitation, engineering studies, historical reviews and testing, as may be reasonably requested from time to time by the Mortgagee.

In addition to all other indemnifications contained herein, Mortgagor agrees to indemnify, defend and reimburse and does hereby hold harmless Mortgagee, and its officers, directors, agents, shareholders, employees, contractors, representatives, successors and assigns, from and against any and all claims, judgments, damages, losses, penalties, fines, liabilities, encumbrances, liens, costs and expenses of investigation and defense of any claim, of whatever kind or nature, including, without limitation, reasonable attorney's fees and consultants' fees, arising from the presence of Hazardous Substances upon, about or beneath the Property or migrating to and from the Property or arising in any manner whatsoever out of the violation of any Environmental Requirements pertaining to the Property and the activities thereon, or arising from the breach of any covenant or representation of Mortgagor contained in this Mortgage. The Mortgagor's obligations under this paragraph shall survive any foreclosure on the Property or repayment or extinguishment of the Indebtedness.

The provisions of this Mortgage are in addition to and supplement any other representations, warranties, covenants and other provisions contained in any other loan documents that Mortgagor has executed for the benefit of Mortgagee.

For purposes of this Mortgage, "Hazardous Substances" shall mean any substance
(a) The presence of which requires investigation, removal, remediation or any form of clean-up under any federal, state or local statute, regulation, ordinance, order, action, policy or common law now or hereafter in effect, or any amendments thereto; or
(b) Which is or becomes defined as a "hazardous waste", hazardous substance", "pollutant" or "contaminant" under any federal, state or local statute, regulation, rule or ordinance or amendments thereto, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601 et seq.) and/or the Resource Conservation and Recovery Act (42 U.S.C. § 6901 et seq.); or

(c) Which is also explosive, flammable, infectious, radioactive, carcinogenic or otherwise hazardous and is regulated presently or in the future by any governmental authority, agency, department, commission, board, agency or instrumentality of the United States, the state where the Property is located or any political subdivision thereof; or

(d) The presence of which on the Property causes or threatens to cause a nuisance upon the Property or to adjacent properties or poses or threatens to pose a hazard to the health or safety of persons on or about the Property; or

(e) The presence of which on adjacent properties could constitute a trespass by the Mortgagor; or

(f) Which contains, without limitation, gasoline, diesel fuel or the constituents thereof, or other petroleum hydrocarbons; or

(g) Which contains, without limitation, polychlorinated biphenyls (PCBs), asbestos or urea formaldehyde foam insulation; or

(h) Which contains, without limitation, radon gas; or

(i) Which contains, without limitation, radioactive materials or isotopes.

19. If Mortgagee institutes any suit or action to enforce any of the terms of this Mortgage, Mortgagee shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and on any appeal. Whether or not any court action is involved, all reasonable expenses incurred by Mortgagee that in the Mortgagee's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest from the date of expenditure until repaid at the rate provided for the primary indebtedness. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, and title insurance, to the extent permitted by applicable law. Mortgagor also will pay any court costs, in addition to all other sums provided by law. If this Mortgage is subject to Section 5-19-10, Code of Alabama 1975, as amended, any attorneys' fees provided for in this Mortgage shall not exceed 15% of the unpaid Indebtedness after default and referral to an attorney who is not a salaried employee of the Mortgagee.

20. This Mortgage, together with any related documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendments.

21. This Mortgage has been delivered to Mortgagee and accepted by Mortgagee in the State of Alabama. Subject to the provisions on arbitration, this Mortgage shall be governed by and construed in accordance with the laws of the State of Alabama.

22. Mortgagor hereby releases all rights and benefits of the homestead exemption laws of the State of Alabama as to the Property.

23. Time is of the essence in the performance of this Mortgage.

24. If a court of competent jurisdiction finds any provision of this Mortgage to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Mortgage in all other respects shall remain valid and enforceable.

IN WITNESS WHEREOF, Mortgagor has executed this Mortgage on the 25-th day of April, 2002.

This Instrument prepared by:

Frontier National Bank

P O Box 2829

Auburn, AL 36831-2829

MORTGAGOR:

Stanley R. Melton IV

P. O. Box 2445

Opelika, Alabama 36803-2445

| Subdivision | Lot | Plat Book | Page | SOURCE OF TITLE |
|---|---|---|---|---|
| QQ | Q | S | T | R | |
| | | | 13 | 30 | Deed Book 2186 at Page 80 |

BOOK            PAGE

Office of the Judge of Probate
of Lee County, Alabama

CERTIFICATE

State of _____
_____ County

In compliance with Ala. Code § 40-22-2 (1975), the owner of this Mortgage hereby certifies that the amount of indebtedness presently incurred is _____ upon which the mortgage tax is paid herewith, and owner agrees that no additional or subsequent advances will be made under this Mortgage unless the Mortgage tax on such advances is paid into the appropriate Judge of Probate office no later than each September hereafter or a document evidencing such advances is filed for record in the above said office and the recording fee and tax applicable thereto paid.

Mortgagor:                                              Mortgagee:

Date, Time and Volume and
Page of recording as shown hereon.

_____          By:_____

_____          Title:_____

INDIVIDUAL ACKNOWLEDGMENT

STATE OF __ALABAMA__
COUNTY OF __LEE__

I, __C. S. Whittelsey__, a Notary Public in and for said County, in said State, hereby certify that __Stanley R. Melton, IV__, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, __he__, executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this __25th__ day of __April, 2002__.

_____
Notary Public

My Commission expires: C.S. WHITTELSEY, Notary Public, State of AL At Large
My Commission Expires September 21, 2004

INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____

I, _____, a Notary Public in and for said County, in said State, hereby certify that _____, whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, _____, executed the same voluntarily on the day the same bears date.

Given under my hand and official seal, this _____ day of _____.

_____
Notary Public

My Commission expires:_____

"EXHIBIT A" ATTACHED TO AND MADE A PART OF
MORTGAGE DATED APRIL 25, 2002, FROM
STANLEY R. MELTON, IV TO FRONTIER NATIONAL BANK

LEGAL DESCRIPTION

Parcel C-1, A RESUBDIVISION OF PARCEL C OF A SURVEY FOR OAKBOWERY REALTY, INC., according to and as shown by that certain map or plat thereof of record in Town Plat Book 13, at Page 30 in the Office of the Judge of Probate of Lee County, Alabama; together with all improvements thereon and appurtenances thereunto appertaining.

_____
STANLEY R. MELTON, IV