# MODIFICATION, EXTENSION, CHANGE IN TERMS AGREEMENT

**BORROWER:**

R & L Trucking Co., Inc.

2405 South Uniroyal Road
Opelika, AL 36801

**LENDER:**

Frontier Bank

P.O. Box 2829
Auburn, AL 36830

## ORIGINAL NOTE INFORMATION

| INTEREST RATE | PRINCIPAL AMOUNT | FUNDING DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| 6.000 | $500,000.00 | 05/01/03 | 05/01/04 | R001702 | 20018099 |

Effective **11/29/2004**, Borrower and Lender agree that the Note, identified above, is amended as follows:

☒ **EXTENSION:** The Maturity Date of the Note is extended to **11/29/2005**.

☒ **INTEREST RATE:** The interest rate on the Note identified above shall be changed to:

☐ A fixed rate of _____ % per annum.

☒ A variable rate of **1.000 % ABOVE** _____ the Index Rate indicated below. Any change in the interest rate resulting from a change in the Index Rate will be effective on: **on the same day the rate changes**.

The Index Rate used for this Note shall be:
Frontier Prime Rate

If the Index Rate is redefined or becomes unavailable, then Lender may select another index which is substantially similar.

The current Index Rate is **5.000** % per annum. The initial interest rate on this amended Note shall be **6.000** % per annum.

**MINIMUM RATE/MAXIMUM RATE:** Subject to applicable law, the minimum interest rate on this Note shall be **N/A** % per annum. The maximum interest rate on this Note shall not exceed **N/A** % per annum, or if less, or if a maximum rate is not indicated, the maximum interest rate Lender is permitted to charge by law.

**RATE ADJUSTMENT LIMITATIONS:** The maximum interest rate increase at any one time will be **N/A** %. The maximum rate decrease at any one time will be **N/A** %.

**PAYMENT SCHEDULE:** Borrower shall pay the principal and interest on the Note according to the following schedule:

This note is payable in 11 payments of all accrued interest monthly beginning December 29, 2004, a final payment of $501,291.67 e plus all accrued interest shall be due and payable on November 29, 2005. e means estimated

**ADDITIONAL TERMS:**

**INSURANCE:** If Borrower has purchased credit life or credit accident and health insurance, this insurance may only cover payments made under the existing Note. Borrower agrees to obtain and deliver to Lender amended or substitute insurance policies or certificates to cover the term of the Note as amended.

**ADDITIONAL DOCUMENTS:** Borrower agrees to execute any additional documents that Lender may request in connection with this Agreement.

**RATIFICATION AND INCORPORATION:** The terms, definitions, and conditions of the existing Note are incorporated by this reference, and shall remain in full force and effect except as specifically modified by this Agreement. The Note and all other loan documents as extended and amended, are hereby adopted, ratified, confirmed and acknowledged to be in full force and effect and binding upon Borrower, with all of the collateral being pledged remaining as security for Lender.

**RESERVATION OF RIGHTS:** If a Borrower under the existing Note does not sign this Agreement, such Borrower will remain liable under the terms and conditions contained in the existing Note if not released from those obligations in a writing signed by Lender.

**SECURITY:** Borrower agrees that all collateral given to secure the original Note shall continue to serve as collateral for the Note as hereby modified, including for any increase in the principal amount of the Note and all interest accrued at any increased rate.

**GUARANTEE:** Guarantor(s) signing below specifically consent to the terms of this Extension and Amendment to Note, and agree that it shall not in any way prejudice Lender's rights under any guaranty given for the Note.

## MODIFIED NOTE INFORMATION

| INTEREST RATE | PRINCIPAL AMOUNT | EFFECTIVE DATE | MATURITY DATE | CUSTOMER NUMBER | LOAN NUMBER |
|---|---|---|---|---|---|
| | | | | | |

**EXHIBIT 7**

BORROWER WAIVES ALL KNOWN AND UNKNOWN, ABSOLUTE AND CONTINGENT, CLAIMS, DEFENSES, SETOFFS OR COUNTERCLAIMS AGAINST LENDER OR ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS AS OF THE DATE OF THIS AGREEMENT. BORROWER ACKNOWLEDGES THAT BORROWER HAS READ, UNDERSTANDS AND AGREES TO THE TERMS OF THIS AGREEMENT. BORROWER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS AGREEMENT.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

LENDER: Frontier Bank

By: _____ [signed]
Mike Mann, Area Executive

R & L Trucking Co., Inc.
BY: _____ [signed]    11/29/04
Stanley R. Melton, IV, President    Date

GUARANTORS:

_____ [signed]    11-29-04
Stanley R. Melton, IV    Date

_____    _____
Date                                                          Date

_____    _____
Date                                                          Date

_____    _____
Date                                                          Date

_____
Date

## MULTIPURPOSE NOTE AND SECURITY AGREEMENT

| | | | |
|---|---|---|---|
| Officer No. | MHM | | |
| Customer No. | | | |

Borrower: "I", "Me" and "My" Means Each Borrower Below Jointly and Severally | Lender: "You" and "Your" Means The Lender, its Successors and Assigns

Stanley R. Melton, IV

3705 Flintwood Lane
Opelika, AL 36801

Frontier Bank

P.O. Box 2829
Auburn, AL 36830
(334)-821-6455

| | |
|---|---|
| Loan No. | 904902 |
| Renewal of | 20018081 |
| Date | November 29, 2004 |
| Loan Amount | $225,250.00 |
| Maturity Date | December 05, 2007 |

NOTE: I promise to pay to you, or your order, at your address above, the principal sum of:
Two Hundred Twenty Five Thousand Two Hundred Fifty and 00/100 _____ Dollars ($ $225,250.00 _____)
together with interest at the rate of interest provided for hereinafter, and I further promise to pay all other fees, charges, and amounts on my part to be paid as provided or disclosed in this note.

☒ **Single Advance:** I have received all of this principal sum. No additional advances will be made under this note.
☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. As of this date I have received the amount of _____ and future principal advances are contemplated.
    ☐ **Conditions:** The conditions for future advances are _____
☐ **Open-End Credit:** You and I agree that I can borrow up to the maximum amount of principal more than one time. This option is subject to all other conditions and expires no later than _____
☐ **Closed-End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

THE PURPOSE OF THE LOAN IS: Refinance commerical real estate _____

**INTEREST:** Interest accrues on a Actual/360 Day basis.
I agree to pay interest on the principal balance owing from time to time as stated below.
☒ **Fixed Rate:** I agree to pay interest at the fixed, simple rate of 6.500 % per year, from 11/29/2004 until paid in full.
☐ **Variable Rate:** I agree to pay interest from _____ at the initial simple rate of _____ % per year. This rate may change as stated below.

**Post-Maturity Interest** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues prior to maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
☐ If checked, interest will accrue at the rate of _____ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
☐ If checked, I agree to pay a minimum FINANCE CHARGE of $ _____ if I pay this loan before you have earned that much in FINANCE CHARGES.
☐ If checked, I agree to pay _____.
**Delinquency and Default:** I agree to pay the costs you incur to collect this note in the event of my default, including your attorney fees.
IF MY PAYMENT IS MORE THAN 10 DAYS LATE, I WILL PAY A LATE CHARGE EQUAL TO 5.000 % OF THE PAYMENT AMOUNT OR $10.00 WHICHEVER IS GREATER UP TO $100.00.
☐ If checked, I agree to pay an interest surcharge of $ _____, not to exceed 6% of that part of the amount financed which does not exceed $2,000.00, as allowed under applicable law. If I prepay the amounts I owe under this note in full, I may be entitled to a refund of part of the interest surcharge, also in accordance with applicable law.

**Payments:** I agree to pay this note as follows:
THIS NOTE IS DUE ON DEMAND, IF NO DEMAND THEN:
Principal and interest are repayable in 35 equal installment payments, amortized over 120 payment(s), in the amount of $2,571.09 each, commencing on January 05, 2005 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of the principal and all accrued interest remaining due and payable on December 05, 2007.

Additional Terms: _____

☐ If checked this is a purchase money loan. You may include the name of the seller on the check or draft for this loan.
**Security:** I give you a security interest in the following:
(1) any property of mine, whether I own it now or in the future, which is in your possession (This includes, but is not limited to, property I give you for safekeeping, collection or exchange, and all dividends and distributions from property.);
(2) the property described below, together with all parts, accessories, repairs, improvements and accessions to the property, and all proceeds and products from the property.

2405 South Uniroyal Road, Opelika Alabama

This loan is cross-collatralized with loan #20018099 & #912

Personal guaranty of R & L Trucking Co., Inc & SRM Financial, Inc.

☒ If checked, this note is secured by a separate Mtg dated 04-25-2002 in the amount of $245,000.00
Description of real estate if the above property is crops, timber, minerals (including oil or gas) or fixtures:

Any person who signs within this box does so to give you a security interest in the property described above. This person does not promise to pay the note.

Name of record owner, if not me: _____
☐ If checked, this security agreement should be filed in the real estate records.                      Date

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN**
BORROWER-I ACKNOWLEDGE RECEIPT OF A COPY OF THIS NOTE AND AGREE TO THE TERMS AND CONDITIONS CONTAINED ON THIS PAGE AND ON PAGE 2 OF THIS NOTE.
CO-SIGNER-I UNDERSTAND THAT I HAVE FULL LIABILITY AND RESPONSIBILITY TO PAY THIS CONTRACT. YOU DON'T HAVE TO MAKE ANY DEMANDS ON ANY OTHER PERSON SIGNING THIS CONTRACT OR TAKE STEPS TO REPOSSESS ANY COLLATERAL BEFORE YOU ASK ME TO REPAY. I HAVE READ AND UNDERSTAND THIS ENTIRE CONTRACT.

| BORROWER (SEAL) Stanley R. Melton, IV  /s/ | DATE 11/29/2004 | BORROWER (SEAL) | DATE |
| BORROWER (SEAL) | DATE | BORROWER (SEAL) | DATE |
| CO-SIGNER (SEAL) | DATE | CO-SIGNER (SEAL) | DATE |

PAGE 1 OF 2    FSHEI11292004030005P                            ALMPN Rev. (4/20/04)
                                                               GP - AL

ADDITIONAL TERMS OF THE SECURITY AGREEMENT

I also agree and promise as follows:

1. **ADDITIONAL SECURITY AND INDEBTEDNESS:** In addition to the collateral described on the page 1 hereof, this note is secured by all additions, replacements, accessions, products and proceeds, including proceeds of any insurance payable as a result of loss or damage to the collateral, and any similar after-acquired collateral. However, the security interest shall not attach to household goods not purchased with the proceeds of this loan or to other after-acquired consumer goods, with the exception of accessions, unless such after-acquired consumer goods are acquired within twenty (20) days after you make this loan. Unless the collateral consists of household goods, the security interest created hereby secures the prompt repayment of all my present and future obligations to you, including, but not limited to, any obligations arising as a result of any future advances, overdrafts, or guarantees, or any expenses or costs incurred by you in accordance with this note, the security agreement contained herein, or any other agreement, I have entered into with you guaranties, or any, expenses or costs incurred by you in accordance with this note, the security agreement contained herein, or any other agreement, I have entered into with you.
2. **WARRANTY OF TITLE:** I warrant to you that I own the collateral free and clear of all liens or security interests, other than the security interest created hereunder and that I will defend the collateral against any asserted claims or demands by other parties.
3. **PRESERVATION OF COLLATERAL:** I will preserve and maintain the collateral and keep the collateral in good condition and repair and will allow you to inspect the collateral at any time.
4. **TAXES, ETC:** I will pay all taxes and other encumbrances on the collateral promptly, and I will otherwise maintain the collateral free and clear of any liens, encumbrances or other security interests.
5. **SALE, ETC. OF COLLATERAL:** I will not sell, convey, lease or otherwise transfer or grant a security interest in the collateral or any part of it without first obtaining written consent from you. Any waiver of your right to object to an unauthorized sale or transfer shall not constitute a waiver with respect to any subsequent unauthorized sale or transfer.
6. **INSURANCE:** I agree to maintain insurance against loss or damage to the collateral in form, amounts, coverages, and basis reasonably acceptable to you and issued by one or more companies reasonably acceptable to you. You will be designated as loss payee on all insurance policies, and I will promptly furnish you with insurance certificates or policies in form satisfactory to you, including stipulations that coverages will not be cancelled or diminished without at least 10 days prior written notice to you. I understand that I have the option of providing any insurance required under this note through an existing policy or a policy independently obtained and paid for by me, subject to your right for reasonable cause to decline any insurance so provided. If at any time I fail to obtain or maintain any insurance required under this note, you may (but shall not be obligated to) obtain such insurance as you deem appropriate, in single or dual interest form at your option. I hereby appoint you as my attorney-in-fact to endorse any insurance proceeds or refund checks in order to collect the amount due on those checks.
7. **ACCOUNTS AS COLLATERAL:** If I have given you a security interest in my accounts receivable, I agree not to settle or compromise any account for less than the full amount of that account without first obtaining your written consent.
I agree to collect my accounts receivable only until you instruct me to do otherwise. I agree to keep the proceeds of all accounts receivable and any goods returned to me in trust for your benefit, and I agree not to commingle them with any other accounts or property of mine. Upon your request, I agree to remit those proceeds to you.
8. **INVENTORY AS COLLATERAL:** If I have given you a security interest in my inventory, I agree to dispose of it only in the ordinary course of business for the fair market value of the property, or for some other price that we have mutually agreed upon.
9. **FARM PRODUCTS AS COLLATERAL:** If I have given you a security interest in my farm products, I agree to provide you with a written list of the buyers, commission merchants or selling agents to or through whom I may sell those farm products. The terms used in this paragraph shall have the meaning attributed to them under the Food Security Act of 1985.
10. **REMEDIES UNDER THE SECURITY AGREEMENT:** You have the following rights under this Security Agreement:
    (1) You may notify account debtors of your security interest in my accounts receivable and direct the account debtor to remit to you or someone else that you designate, rather than to me; you may endorse any checks or other items received from those account debtors;
    (2) You may note the fact of your security interest in the collateral on the face of any chattel paper or instruments covered by this or any other security agreement I have signed with you;
    (3) With respect to any collateral covered hereby, you may demand, collect, endorse, receive, give receipt for, compromise, settle and handle any suits or other proceedings involving the collateral;
    (4) You may take any steps you feel necessary in order to take possession of or protect the collateral, including performing any part of a contract or endorsing that contract in my name; and
    (5) You may make any necessary entries to my business records showing the existence of the security interest.
11. **PAYMENTS MADE BY YOU:** If I fail (a) to keep the collateral free of all taxes, liens, security interests, encumbrances, and other claims; (b) to provide required insurance; or (c) to make repairs to the collateral, you may (but are not obligated to) do so. All expenses incurred or paid by you for such purposes will then bear interest at the rate charged under the note from the date incurred or paid by you to the date of repayment by me. All such expenses will become a part of my debt owed to you and, at your option, will (a) be payable on demand, (b) be added to the balance of the note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the note, or (c) subject to applicable law regarding the right to refinance scheduled payments, be treated as a balloon payment that will be due and payable at the note's maturity. The collateral also will secure payment of these amounts.
12. **PURCHASE MONEY SECURITY INTEREST:** With respect to purchase money security interest arising under this security agreement:
    (1) Payments made on non-purchase money loans secured by this agreement will not be deemed applicable to any purchase money loans, and
    (2) Payments made on any purchase money loan will be applied first to any non-purchase money portion of said loan, with the remaining balance to be applied to the purchase money obligations in the order in which the items of collateral were acquired. A purchase money loan means a loan used in whole or in part to acquire the collateral which secures the loan and any extension, renewal, consolidation of refinancings of such loans.
13. **REMEDIES UNDER THE SECURITY AGREEMENT:** I will be in default under the terms of the security agreement if I default under the terms of any note that this agreement secures or if I fail to keep any promise contained in this agreement. If I default, you shall have all of the rights and remedies available to a secured creditor under the Alabama Uniform Commercial Code. I will be obligated to make the property or collateral available to you at a reasonably convenient place and time. I agree that you are then authorized to take possession of the collateral and sell it as provided under the terms of the Alabama Uniform Commercial Code. I agree that written notice sent to my address on the face of the note by first class mail ten (10) days in advance of any such sale will be reasonable notice.
14. **FILING:** A carbon, photographic or other reproduction of this agreement may be used as a financing statement.

ADDITIONAL TERMS OF THE NOTE

I also agree and promise as follows:

1. **PAYMENTS:** Each payment that I make under the terms of this note will be applied to collection costs, late charges, fees, other costs or expenses that I must pay under this note or other loan documents, accrued interest and principal in an order determined in accordance with applicable law.
2. **RENEWALS OR EXTENSIONS:** I agree that you may renew or extend the maturity of this note one or more times, in your sole discretion, without affecting my liability or that of any other party responsible for the repayment of this note, and I further agree that you may renew or extend the maturity of this note without in any way affecting your right to or lien upon any property given as collateral for this note.
3. **INDEX RATE:** If the interest rate on this note is established at a rate which varies with respect to an index rate you establish, the index rate will determine the rate on this note. I understand that the index rate is not necessarily the lowest rate that you charge on your loans. I also understand that under no circumstances will the interest rate charged on this note exceed the maximum rate allowed by law.
4. **SINGLE ADVANCE LOANS:** If this loan is made as a single advance, that one advance is the only advance anticipated. However, you may add any amounts to the principal balance of this note to the extent that those amounts represent payments made as provided in the paragraph above entitled "PAYMENTS MADE BY YOU" or as otherwise provided for herein or in any other agreement I have made with you.
5. **MULTIPLE ADVANCE LOANS:** If this loan is to be made in multiple advances, you and I anticipate that more than one advance will be made. On extensions of closed-end credit, repayments of a portion on the principal balance of the note will not enable me to obtain additional credit.
On extensions of open-end credit, repayment of a portion on the principal balance of the note will entitle me to obtain additional credit, unless the open-end credit commitment evidenced by this note has expired or has been terminated by you. You will not be obligated to make an advance to the extent that such an advance would cause the unpaid principal balance of the note to exceed the maximum face amount of the note. You have no obligation to make such an advance, even if you occasionally choose to do so.
6. **INTEREST:** Each advance made under the terms of this note will earn interest only from the date that I receive the advance. The interest rate provided for in this note at any point in time will apply to the entire principal balance outstanding at the time.
7. **POST MATURITY RATE:** For purposes of this note the term "maturity" shall mean the following:
    (1) If the note is a "demand" note, the date you make your demand or the date that payment of the note is accelerated by you, whichever is earlier;
    (2) If the note is a "demand" note, with a stated alternate maturity date, the date of your demand or the alternative maturity date or the date that you accelerate payment of the note, whichever date is earlier; or
    (3) In all other cases, the date set for the last regularly scheduled payment of principal or the date that you accelerate payment of the note, whichever date is earlier.
8. **SET-OFF:** You have the right to set-off my deposit accounts and other rights that I may have to receive the payment of money from you. You may exercise your right of set-off without notice to me and without regard to the type or value of collateral or the existence of any guaranty for or other agreement to pay this note.
You will not be responsible for the dishonor of any check when that dishonor occurs as a result of your exercise of the right of set-off against my account.
9. **DEFAULT:** I will be in default if any of the following events occurs:
    (1) I fail to make a required payment when due;
    (2) I breach any promise I have made to you under the terms of this note, the security agreement (if applicable) or any other loan or agreement with you;
    (3) Any representation, warranty, promise or statement that I have made to you proves to be (or at the time it was made or given was) materially false or incorrect;
    (4) I die, become insolvent, or initiate bankruptcy or similar proceedings, or am adjudged a bankrupt.
    (5) Any of my property in which you have a lien or security interest is attached or otherwise taken by another creditor, including any garnishment of my accounts with you;
    (6) I fail to maintain required insurance covering the collateral;
    (7) The maturity of any indebtedness I owe to others is accelerated as a result of the occurrence of a default under this or any other agreement;
    (8) You at any time believe that the prospect for repayment of any portion of the indebtedness secured hereby is significantly impaired;
    (9) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, or ends its business or existence.
10. **LENDER'S REMEDIES:** Upon default, you may at your option, do one or more of the following:
    (1) You may, without notice, accelerate the maturity of this note and require that all unpaid charges, interest and principal balances be immediately due and payable;
    (2) You may exercise your right of set-off against any right I have to receive payment of money from you;
    (3) You may exercise any rights or remedies you have under any other agreement which secures this note;
    (4) You may demand additional security or obligors to insure repayment of this note;
    (5) You may exercise all the rights of a secured party under the Alabama Uniform Commercial Code, and you may make use of any other remedy available to you under any other state or federal statute.
    (6) Your rights and remedies available under this note, under other agreements between you and me, and under law, are cumulative and not exclusive.
11. **WAIVER AND CONSENT:** I hereby waive presentment, demand for payment, protest and notice of dishonor, and I consent to any extension you may grant either before or after maturity of this note. I consent to any substitution, release or non-perfection of security interest in the collateral and to release or covenant not to sue of any co- signer or guarantor. No waiver of a default shall be deemed a waiver of any other or later default. If under the terms of this security agreement a security interest lien would be created in a principal dwelling used by me or any other person as a home, you waive the security interest so created unless you have given an appropriate opportunity to rescind and the owner of the property has not exercised that right.
12. **COLLECTION COSTS AND ATTORNEY'S FEES:** If I am in default and you have to sue or take other steps to collect or secure this note, I agree to pay your reasonable costs. If the original amount financed is greater than $300 and if you refer this note to an attorney who is not your salaried employee, I agree that these costs include a reasonable attorney's fee. If this loan is primarily for a consumer's personal, family, or household use, a reasonable attorney's fee will not exceed 15% of the unpaid debt.
13. **GOVERNING LAW:** This note shall be governed by the laws of the State of Alabama.
14. **RETURNED CHECK CHARGE:** I agree to pay a charge of not more than the maximum amount permissible under applicable law if any instrument I give to you to pay this note is dishonored.
15. **MAXIMUM INTEREST RATE:** In the event the interest rate as determined under this note exceeds the maximum rate of interest permitted by law, then the interest rate shall be the maximum rate so permitted. Any amount received by you that if applied to the payment of interest would exceed the maximum rate of interest shall be used to reduce the principal balance of the loan remaining.
16. **INSURANCE YOU BUY OR PROVIDE:** I agree that any insurance you buy or provide, whether credit, property or other types of insurance, may be bought through an agency or company, which may be affiliated with you. The premium may be substantially higher than insurance I could buy myself. Any agency or company, including one affiliated with you, may receive a fee based upon the amount of the premium. You may also benefit from buying or providing this insurance. I CONSENT TO THIS. Insurance requested by me in connection with this loan may be subject to approval by the insurer.
17. **FINANCIAL STATEMENTS:** Upon your request, I agree to provide you with financial statements and any other financial information you may deem necessary. I warrant to you that all financial statements and information provided are and will be accurate, correct and complete.
18. **MY COMPLIANCE:** I agree that if you do not insist upon strict compliance with the terms of this note, you shall not have waived or otherwise given up your right to insist upon my strict compliance at a later date. Time is of the essence in my performance of this note.
19. **ENTIRE AGREEMENT:** I agree that this note plus any other documents that I signed when I signed this instrument contain the entire agreement between you and me. I agree that you have not made any promises or representations to me that are not stated in this note or those other documents.
20. **UNENFORCEABLE PROVISIONS:** If any section of this note is not enforceable, that will not affect the validity of any other section. However, if the enactment or expiration of any application laws has the effect of rendering any provision of this note unenforceable according to its terms, at your option, you may choose to declare this loan due at once.
21. **HEADINGS:** The headings in this note are inserted for convenience only and do not control the meaning or effect of any of its terms.
22. **SUCCESSORS AND ASSIGNS; AMENDMENTS:** This note shall bind my heirs, successors and assigns, but I may not assign or transfer my obligations under this instrument without your prior written consent. No amendment or modification of any provision of this note shall be effective unless in writing signed by both you and me.

---

**GUARANTEE:** By signing below I unconditionally guarantee the payment of the note and any amounts agreed to be paid under the terms of the security agreement. I also agree that all of the terms of the note and, to the extent applicable, the security agreement will apply to me. **CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

| NAME: SRM Trucking Co., Inc. BY: Stanley R. Melton, IV, President | NAME: SRM Financial, Inc. BY: Stanley R. Melton, IV, President |
|---|---|
| X _____ DATE 11/29/2004 | X _____ DATE 11/29/2004 |

**NOTICE TO THE CO-SIGNER**

You (the co-signer) are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, and reimburse Lender for advances it makes to protect collateral, such as for taxes and insurance premiums, all of which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.
This notice is not the contract that makes you liable for the debt. **CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

| NAME | NAME |
|---|---|
| X _____ DATE | X _____ DATE |

ALMPNBK   Rev. (4/20/04)