RECEIVED
2005 OCT -6 P 3:42
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FRONTIER BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:05 CV 901-F |
| | ) |
| R & L TRUCKING COMPANY, INC., | ) |
| et als., | ) |
| | ) |
| Defendants. | ) |

### BRIEF IN SUPPORT OF DEFENDANTS' OBJECTION
### TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

Come now the Defendants, R & L Trucking Company, Inc. (hereinafter referred to as "R&L"), SRM Financial, Inc. (hereinafter referred to as "SRM") and Stanley R. Melton, IV (hereinafter referred to as "Melton"), by through their undersigned attorneys of record, as requested by this Honorable Court, without submitting to the jurisdiction of this Court, and respond to Plaintiff's Request for Injunctive Relief, without waiving the right to file any and all motions prior to responsive pleadings, including but not limited to the right to file motions to compel arbitration, and specifically objecting to and challenging this Court's in persona and subject matter jurisdiction, and as grounds therefore, state as follows:

### INTRODUCTION

On the 3rd day of October, 2005, this Honorable Court conducted a telephonic conference with attorneys for all parties regarding Plaintiff's "Motion Requesting Court Schedule Immediate Hearing on Injunctive Relief." At the close of said conference call, this Honorable Court directed the attorneys for Defendants to respond to questions raised

1

by Plaintiff's motion for injunctive relief, (1) Does this Court have jurisdiction to entertain Plaintiff's motion for a temporary restraining order taking into account the arbitration agreement entered into by the parties?; (2) Is R&L in default?; and (3) If this Court does have jurisdiction to entertain Plaintiff's motion, what harm, if any, would such an injunction inflict upon R&L? This Honorable Court further directed R&L to produce accounts receivable as of September 30, 2005. A copy of R&L's accounts receivables as of September 30, 2005, is attached hereto as "Exhibit A."

## STATEMENT OF FACTS

On or about the 10th day of April, 2002, Plaintiff made a "Commitment Letter" to R&L for a "Line of Credit Facility", which R&L accepted. (See Plaintiff's Complaint, Exhibit 3). Said Commitment Letter included an arbitration agreement. (See Plaintiff's Complaint, Exhibit 3 ¶ 14). All contractual documents signed by and between Plaintiff and Defendants were drafted by Plaintiff. (See Plaintiff's Complaint, Exhibit 3 ¶ 14). On or about the 25th day of April, 2002, Plaintiff and R&L entered into a "Multipurpose Note and Security Agreement" with Loan No. 20018099 in the amount of $500,000.00. (See Plaintiff's Complaint, Exhibit 4).

On or about the 1st day of May, 2003, Plaintiff and R&L entered into an agreement entitled "Mediation and Arbitration Disclosures" for Loan No. 20018099. (See Plaintiff's "Motion Requesting Court Schedule Immediate Hearing on Injunctive Relief", Exhibit 1).

On or about the 29th day of November, 2004, Plaintiff and R&L entered into a "Modification, Extension, Change in Terms Agreement" for Loan No. 20018099. (See Plaintiff's Complaint, Exhibit 7). Said modification agreement changed the terms of

2

Loan No. 20018099, requiring the loan be paid "in 11 payments of all accrued interest monthly beginning December 29, 2004, a final payment of $501,291.67 e plus all accrued interest shall be due and payable on November 29, 2005." (See Plaintiff's Complaint, Exhibit 7). R&L believes said modification is the third such modification of said loan. **R&L has made all payments pursuant to the above said modification agreement.**

On or about the 20th day of September, 2005, Plaintiff illegally applied approximately $84,023.63 towards the balance of Loan No. 20018099 that was not due until November 29, 2005. (See Plaintiff's Complaint, ¶¶ 23-24, Exhibits 7 and 11).

On or about the 21st day of September, 2005, Plaintiff filed its complaint in the above styled case alleging (1) two counts of breach of contract by all defendants and (2) one count seeking injunctive relief. (See Plaintiff's Complaint). During the above said October 3, 2005, conference call, Plaintiff indicated that the only injunctive relief sought was (1) an order allowing the Plaintiff to collect all accounts receivable of R&L or (2) an order preventing R&L from spending or encumbering all accounts receivable, as of a date certain, so that Plaintiff's collateral position does not change from said date.

## STANDARD OF REVIEW

A district court's order compelling or denying arbitration is reviewed de novo. Randolph v. Green Tree Fin. Corp.-Alabama, 178 F.3d 1149, 1152 (11thCir. 1999). "The grant or denial of a preliminary injunction is a matter within the discretion of the district court." Digitel Corp. v. Deltacom, Inc., 953 F.Supp. 1486, 1494-95 (M.D.Ala. 1996), citing Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11thCir. 1991).

3

**ARGUMENT**

I. **The Court does not have jurisdiction to entertain Plaintiff's motion for a temporary restraining order.**

The first question posed by the Court is: "Does this Court have jurisdiction to entertain Plaintiff's motion for a temporary restraining order taking into account the arbitration agreement entered into by the parties?" The United States Supreme Court has not yet addressed this issue specifically, and the Circuit Courts are divided on this issue. It appears that whether a district court has jurisdiction to entertain a motion for a preliminary injunction where there exists a valid arbitration agreement depends upon the issues raised by the complaint and/or the scope of the arbitration agreement.

A. **Issues raised by Complaint.**

"Section 3 [of the FAA] provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration." Battels v. Sears National Bank, 365 F.Supp.2d 1205, 1211 (M.D.Ala. 2005). In the Battels case, this Court, in quoting the United States Supreme Court, noted that "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Id., quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 24 (1983).

In Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397 (1976), an employer sought to enjoin a sympathy strike by union workers pending arbitration. The District Court refused to issue injunctive relief, the Second Circuit affirmed the denial of injunctive relief, as did the United States Supreme Court. The Court reasoned that the issues in dispute, whether a sympathy strike violated the no-strike rule and, if so, what

4

remedies were available, were matters for the arbitrator, and if the strike was found to be illegal, an injunction would be available based upon the arbitral decision. Id., at 405 and 409-410. In Merrill Lynch, Pierce, Fenner & Smith Inc. v. Shubert, 577 F.Supp. 406 (D.C.Fla. 1983), a brokerage firm sought to enjoin a former employee from contacting employer's clients or using employer's client lists. The District Court denied injunctive relief reasoning that the issues raised by the complaint fell within the scope of the arbitration clause at issue. Id., at 407. The District Court went on to hold:

> "The federal arbitration act manifests a strong Congressional policy in favor of dispute resolution by arbitration. The act contemplates moving the parties to arbitration as quickly as possible and, thus, as inexpensively as possible to the resources of the federal court system. Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 22 (1983). Were this court to adjudicate the probability of the plaintiff's success on the merits of the very issues which are subject to arbitration, the judicial process might well interfere with the ability of the arbitration panel to fashion appropriate relief through the arbitration process. Furthermore, the inquiry necessary to make such an adjudication would clearly be inconsistent with the purpose of the arbitration act to unburden the court system. This court concludes, therefore, that an adjudication of the claim for preliminary injunctive relief would disserve the public interest in arbitration where the adjudication would necessitate a ruling on the major issues which are subject to arbitration."

Id.

In the case at bar, the issue raised by Plaintiff's complaint is whether or not R&L is in default of Loan No. 20018099? On or about the 25th day of April, 2002, Plaintiff and R&L entered into a "Multipurpose Note and Security Agreement" with Loan No. 20018099 in the amount of $500,000.00. (See Plaintiff's Complaint, Exhibit 4). On or about the 29th day of November, 2004, Plaintiff and R&L entered into modification agreement changing the terms of Loan No. 20018099, requiring the loan be paid "in 11 payments of all accrued interest monthly beginning December 29, 2004, a final payment of $501,291.67 e plus all accrued interest shall be due and payable on November 29,

2005." (See Plaintiff's Complaint, Exhibit 7). R & L is not in default of the terms of the modification agreement dated November 29, 2004.

There is no dispute that Plaintiff's breach of contract claims are due to be arbitrated. This issue must be resolved through arbitration, as agreed by the parties. If Plaintiff is successful in arbitration then Plaintiff may seek injunctive relief, in arbitration.

**B.    Scope of Arbitration Agreement.**

The Eleventh Circuit Court of Appeals addressed the issue of whether a district court could issue a preliminary injunction taking into account an agreement to arbitrate in American Express Financial Services, Inc. v. Makarewicz, 122 F.3d 936 (11thCir. 1997). In Makarewicz, the Court reversed the district court's denial of appellant's motion for preliminary and permanent injunctions in that the language in the arbitration agreement at issue provided for court issued injunctive relief pending arbitration. The Court, in holding that the agreement of the parties was controlling, stated:

> "Under the FAA, upon motion of a party, district courts must compel arbitration of all claims subject to arbitration. On the other hand, 'the FAA does not require parties to arbitrate when they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement.' Because parties are free to structure their arbitration agreements as they see fit, 'they may limit by contract the issues which they will arbitrate.' 'When deciding whether the parties agreed to arbitrate a certain matter ... , courts generally ... should apply ordinary state-law principles that govern the formation of contracts.'"

Id., at 940 (citations omitted). The Court noted that the provisions of the agreement left "no room for ambiguity." Id.

In the case at bar, the parties entered into one agreement which contained an arbitration clause. (See Plaintiff's Complaint, Exhibit 3 ¶ 14). The parties, at a later date,

signed another document entitled "Mediation and Arbitration Disclosures" for Loan No. 20018099. (See Plaintiff's "Motion Requesting Court Schedule Immediate Hearing on Injunctive Relief", Exhibit 1).

(1) **April 10, 2002, Commitment Letter.**

The arbitration clause contained in the Commitment Letter dated April 10, 2002, covers "[a]ny controversy, claim, dispute or disagreement arising out of this COMMITMENT LETTER or the LINE OF CREDIT Facility will be settled by arbitration . . ." (See Plaintiff's Complaint, Exhibit 3 ¶ 14). There is no ambiguity in the language of the arbitration provision as contained in the Commitment Letter, everything is to be submitted to arbitration. **The agreement does not specifically reserve the right to seek an injunction from the courts prior to arbitration.** If Plaintiff proposes to proceed with its claims based on the Commitment Letter, there is no question that all matters at issue must be referred to arbitration, and this Court does not have jurisdiction to enter a preliminary injunction.

(2) **May 1, 2003, Disclosure Document.**

The document entitled "Mediation and Arbitration Disclosures" **refers only to Loan No. 20018099** and contains the following language: "Except as to provisional remedies, self-help and foreclosure, each party consciously agrees to waive its right to trial by jury or by judge and submit to mediation and/or binding arbitration." Nothing in the language of the "Mediation and Arbitration Disclosures" amends the arbitration agreement as contained in the Commitment Letter. Furthermore, the "Mediation and Arbitration Disclosures" document

refers to a "Mediation and Arbitration Agreement"; however, no such agreement has been produced by Plaintiff. Noting in the "Mediation and Arbitration Disclosures" document specifically reserves to the parties injunctive relief from the courts prior to arbitration. Plaintiff drafted the disclosure document, and must be construed against the Plaintiff. Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 746 (Ala. 2000). If Plaintiff proposes to proceed with its claims based solely on Loan No. 20018099, admittedly the answer to the Court's question could go either way, depending on how this Court reads the disclosure document. However, in deciding such a toss-up, the Court may take two matters into consideration: (1) R&L is not in default of Loan No. 20018099 and (2) "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Battels v. Sears National Bank, 365 F.Supp.2d at 1211, quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corporation, 460 U.S. 1, 24 (1983).

**II.     R&L is not in default.**

The question asked by the Court of whether R&L is in default is not proper. As set forth above, this issue, as agreed to by the parties, is required to be resolved through arbitration. Without waiving this point, the answer to this Court's question is no. As set forth above, and as evidenced by the exhibits attached to Plaintiff's complaint, the November 29, 2004, modification agreement changed the terms of Loan No. 20018099, and **R&L has made all payments pursuant to the modification agreement.** In fact, Plaintiff's have illegally seized large sums of money from R&L's checking account, previously maintained with Plaintiff, and illegally and improperly cashed a certificate of

deposit previously maintained by R&L with Plaintiff and applied the money, in some fashion to the outstanding loan balance.

**III.     Harm an injunction would inflict upon R&L.**

"The Eleventh Circuit Court of Appeals has established a four-prong test for determining whether a preliminary injunction should issue. Under this test, the party moving for a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm that the injunction may cause the opposing party; and (4) that granting preliminary injunctive relief is not adverse to the public interest." Digitel Corp. v. Deltacom, Inc., 953 F.Supp. 1486, 1495 (M.D.Ala. 1996), citing Ferrero v. Associated Materials, Inc., 923 F.2d 1441, 1448 (11thCir. 1991).

In addressing the third prong as directed by this Court, it is undisputed that were an injunction issued, R&L would be out of business and other financial entities would suffer financial losses in the form of lost loan payments. (See Plaintiff's "Motion Requesting Court Schedule Immediate Hearing on Injunctive Relief", ¶ 5.B., & Affidavit of Stanley R. Melton, IV (attached hereto as "Exhibit B"). However, prior to reaching the third prong, the first two prongs must be addressed. "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four requisites." U.S. v. Jefferson County, 720 F.2d 1511 (11thCir. 1983), quoting Canal Auth. of State of Fla. v. Calloway, 489 F.2d 567 (5thCir. 1974). Plaintiff has failed to make an adequate showing as to the first two prongs under Rule 65.

As to the first prong, there is no dispute that R&L is not in default of Loan No. 20018099. Plaintiff can only succeed if R&L is in default. As to the second prong, Plaintiff alleges that "it will suffer irreparable harm and injury if this Court does not consider granting injunctive relief as requested in the Complaint." (Plaintiff's "Motion Requesting Court Schedule Immediate Hearing on Injunctive Relief", ¶ 5.A.). Plaintiff's complaint is not verified, and Plaintiff has not provided an affidavit to the Court in support of the contentions of its lawyer.

## CONCLUSION

The issues raised by Plaintiff are subject to arbitration, and the parties did not specifically reserve the right to seek injunctive relief outside of arbitration; therefore, this Honorable Court does not have jurisdiction to entertain Plaintiff's claim for injunctive relief. Even if this Court had jurisdiction to entertain such claim, R&L is not in default of the loan at issue, and Plaintiff cannot meet its burden as to the four prerequisites to be met in obtaining injunctive relief.

WHEREFORE, Defendant's pray this Honorable Court will refer Plaintiff's motion for injunctive relief to arbitration or, in the alternative, deny said motion.

Respectfully submitted this the 6th day of October, 2005.

WHITTELSEY, WHITTELSEY & POOLE, P.C.

/s/_____
BY: DAVIS B. WHITTELSEY
Bar #:WHI067
Attorney for Defendant
Post Office Box 106
Opelika, Alabama 36803-0106
Tel.:  (334) 745-7766
Fax:  (334) 745-7666

## CERTIFICATE OF SERVICE

      I hereby certify that I have served a copy of the foregoing document upon the following individuals, by hand delivering a copy or by placing it in the United State mail, postage prepaid, at their correct addresses this the 6th day of October, 2005.

Charles N. Parnell, III
Parnell & Crum, P.A.
Post Office Box 2189
Montgomery, Alabama 36102-2189
Tel.:   (334) 832-4200
Fax:   (334) 293-3550

/s/ _____
DAVIS B. WHITTELSEY