IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT EASTERN DIVISION

FRONTIER BANK, a Georgia
state banking corporation,

    Plaintiff,

vs.                                                    CASE NO. 3:05 cv 901-F

R & L TRUCKING COMPANY, INC.,
an Alabama corporation, SRM FINANCIAL,
INC., an Alabama corporation, and
STANLEY R. MELTON, IV, an individual,

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

COMES NOW the Plaintiff, by and through its attorney of record, and files this, its response to the Defendants' Objection to Plaintiff's Request for Injunctive Relief. Plaintiff relies on the authority previously cited to the Court for this Court's absolute right and jurisdictional power to invoke injunctive relief for the express purpose of preserving the status quo between the parties while any arbitration demanded by the Defendants proceeds. In the Objection filed by the Defendants, Defendants attempt to make an issue as to whether or not there has been an event of default under the loan documents. Plaintiff would contend that a review of the language of the loan documents and of the undisputed facts would clearly show that a default has occurred and that the bank was well within its rights in declaring a default and accelerating the balance of all amounts due under all loans. Counsel for Plaintiff will respond to the three questions posed by this Court in its telephone conference on Monday, October 3, 2005, in no particular order.

1

## 1. HAS A DEFAULT OCCURRED?

While reminding the Court that there are multiple loans in this case, the primary loan in dispute is the account receivable line of credit loan originally executed on April 25, 2002. Prior to the loan documents being executed on that date, Plaintiff, Frontier National Bank, issued a Commitment Letter on April 10, 2002. A copy of the Commitment Letter is attached hereto as Exhibit 1, and a copy of the Multi-Purpose Note and Security Agreement evidencing the line of credit facility is attached hereto and made a part hereof as Exhibit 2.

Condition 8 of the Loan Commitment Letter required the company, R & L Trucking Company, Inc., and SRM Financial, Inc. to submit annual compiled financial statements. The principal of the business, Mr. Stanley R. Melton, IV, was required to submit annual personal financial statements and copies of his personal tax returns. Neither compiled financial statements on either company nor an updated personal financial statement during calendar year 2004 or 2005, or a copy of a 2004 tax return have been delivered to the bank as required during calendar year 2004 or 2005.

Furthermore, Paragraph 9 of the Multi-Purpose Note and Security Agreement (Exhibit 2) states various events of default, including the following:

> "9.(8) You at any time believe that the prospect for repayment of any portion of the indebtedness secured hereby is significantly impaired."

Other loan documents connected with the line of credit revealing the formula that was to be used for the available amount that could be advanced under the line of credit are attached collectively as Exhibit 3. The Loan Commitment Letter and these loan documents made it clear that R & L Trucking Co., Inc. could not borrow or have outstanding in principal

an amount greater than 80% of eligible receivables. When the loan was originally made in April of 2002, R & L Trucking Co., Inc. disclosed to Frontier National Bank that it had receivables of approximately $535,000.00. As late as November, 2004, R & L Trucking Co., Inc. represented to the bank that it had total receivables of $534,635.06 and eligible receivables of $531,703.00. A copy of the printout provided to the bank by R & L Trucking Co.., Inc. at that time is attached hereto as Exhibit 4. Based on that report, the eligible amount that R & L Trucking Co., Inc. could have outstanding at that time was approximately $425,000.00. Also based on that report and other assurances bank officers received from the principal of the business, Stanley R. Melton, IV, the bank renewed the accounts receivable line of credit facility for another year covering November, 2004 to November, 2005.

Defendant has claimed that the Modification, Extension, Change in Terms Agreement changed or modified the payment terms and insinuates or implies that the Defendant, R & L Trucking Co., Inc. was only obligated to make interest payments based on the modification. A copy of the Modification Agreement with an effective date of November 29, 2004 extending the maturity of the debt to November 29, 2005 is attached hereto as Exhibit 5. Referring back to Exhibit 2, which was the original Multi Purpose Note and Security Agreement dated April 25, 2002, one will see that the payment terms really have never changed. Under the terms of the original Note, the following provision is found in the middle of Page 1:

"Payments: I agree to pay this note as follows:

This note is payable in 11 payments of all accrued interest monthly beginning May 25, 2002, a final payment of $502,798.61 e plus all accrued interest shall be due and payable on April 25, 2003. E means estimated. THIS IS

3

A VARIABLE RATE LOAN. SEE NOTE FOR A DESCRIPTION OF HOW YOUR LOAN TERMS AND PAYMENTS MAY CHANGE."

The accounts receivable line of credit note has from inception been a one (1) year note calling for minimum payment terms of interest only. These interest payments did not abrogate the obligation of R & L Trucking Co., Inc. to make appropriate principal reductions as the eligible account receivables declined. If the Defendant, R & L Trucking Co., Inc.'s, accounts receivable had stayed at a level of $535,000.00 or more as they had historically, then Defendants would be right that no additional payments of principal would be required under the loan documents. However, once the eligible accounts receivable declined, then by the terms of all of the loan documents going back to April of 2002, R & L Trucking Co., Inc. was required to reduce the outstanding principal balance. That was the agreement in April of 2002, and that was never changed by any Modification or Extension Agreement. Hence, on August 15, 2005 when the eligible accounts receivable totaled only $85,000.00, R & L Trucking Co., Inc. was contractually required to reduce the principal balance by an amount of roughly $367,000.00. Demand was made upon R & L Trucking Co., Inc. to do so, and failing to do so was an event of default.

In spite of frequent and firm requests that R & L Trucking Co., Inc. provide the bank with updated accounts receivable information, the bank did not receive any such information until, to-wit: August 15, 2005. At that time, the bank, for the first time, realized that accounts receivable had declined from late November, 2004 when they stood at $535,000.00 to nine months later being reduced to $85,000.00, a reduction of nearly one-half million dollars. In spite of this significant reduction, the principal balance of the accounts receivable line of credit had not been reduced at all. This alone is justification

for the bank to have justifiable and serious concerns that R & L Trucking Co., Inc. could pay the indebtedness due the bank, and thereby, justified the declaration of default.

By discussing and arguing this one event of default, the bank does not intend to imply to this Court that there were not other justifiable events of default on which the bank based its actions and on which the bank relied in taking its course of conduct in this case. Counsel for bank does not want to unduly extend this pleading by arguing multiple events of default that occurred in this matter, when all that it required for the bank to proceed in the manner in which it did was one serious event of default. Clearly, the reduction in accounts receivable by nearly one-half million dollars, which at the same time had no corresponding reduction in the outstanding principal indebtedness, is a very serious event of default. Failing to reduce the principal balance appropriately in late August, 2005, and failing to submit required financial statements and tax returns were other clear and overt events of default.

## 2. JURISDICTION OF THIS COURT

Plaintiff has already cited the Court ample authority to show that the Court has both the power and the jurisdiction to entertain preliminary matters and a request for injunctive relief by the Plaintiff in order to preserve the status quo. Plaintiff would cite the Court to that authority already filed with the Court and would note that counsel for the Defendants in its Brief and Objection did not cite any case contrary to the authority cited by Plaintiff heretofore for this proposition. While the exact language of the arbitration provision varies slightly from loan document to loan document, the case law cited by Plaintiff makes no distinction based on the wording of the Arbitration Agreement as far as the power of this Court to entertain injunctive relief.

### 3. NATURE AND DEGREE OF HARM IF THE COURT IMPOSES INJUNCTIVE RELIEF

As the bank feared, accounts receivable have continued to decline dramatically from August 15, 2005 when the bank finally got a report from R & L Trucking Co., Inc. showing receivables of about $85,000.00 to the current time. The exhibit attached to Defendants' Objection shows receivables have now declined all the way to $48,000.00. At that rate, in another month or two, there will be zero receivables, and this business will be closed. Obviously, this defendant has continued to operate basically on collecting receivables that belong to the bank and spending those receivables to cover operating losses and other amounts due other creditors rather than paying the bank.

The bank has heretofore demanded in writing that R & L Trucking Co., Inc. cease collecting and spending receivables and turn all receivables over to the bank, as it has both a legal and contractual right to do. Specifically, Paragraph 10 of the Security Agreement (Exhibit 2) states as follows:

> "10. REMEDIES UNDER THE SECURITY AGREEMENT: You have the following rights under this Security Agreement:
>
> (1)  You may notify account debtors of your security interest in my accounts receivable and direct the account debtor to remit to you or someone else that you designate, rather than to me; you may endorse any checks or other items received from those account debtors;
>
> (2)  You may note the fact of your security interest in the collateral on the face of any chattel paper or instruments covered by this or any other security agreement I have signed with you;
>
> (3)  With respect to any collateral covered hereby, you may demand, collect, endorse, receive, give receipt for, compromise, settle and handle any suits or other proceedings involving the collateral;
>
> (4)  You may take any steps you feel necessary in order to take possession of or protect the collateral, including performing any part of a contract or endorsing the contract in my name; and

6

> (5) You may make any necessary entries to my business records showing the existence of the security interest."

While admittedly the grant of injunctive relief might have the result of putting R & L Trucking Co., Inc. out of business, it should be clear to this Court that that is going to occur soon enough based on the fact that in the near future, R & L Trucking Co., Inc. will have few, if any, account receivables, and therefore, the company will be out of money. It is unfair to Plaintiff that R & L Trucking Co., Inc. be allowed to continue to use without the permission or consent of the bank, the bank's collateral and the accounts receivable that belong to the bank. The bank has already supplemented this business from a financial standpoint to the extent of approximately $400,000.00. Allowing R & L Trucking Co., Inc. to continue to operate and collect the bank's few remaining receivables would be patently unjust and unfair and would provide the bank no remedy whatsoever, causing it to suffer irreparable harm and injury.

## 4. WHAT COURT SHOULD REQUIRE OF PLAINTIFF IN THE EVENT IT GRANTS INJUNCTIVE RELIEF

In the Complaint that is filed in this case, Plaintiff clearly asks the Court to intervene in some fashion to include the grant of injunctive relief, if necessary, to assist the bank in enforcing the terms and provisions of the consensual security agreement between the parties. What the bank really is requesting is that the Defendant be ordered to turn over to the bank, as the security agreement clearly provides as set forth above and as Alabama law allows, appropriate accounts receivable documents so the bank can put the account debtors on notice to make direct payments to the bank. The security agreement gives this power to the bank irrespective of whether there has been a default under the corresponding loan agreement or not. Hence, if the Court grants the simple turnover

7

motion, then no injunctive relief is technically necessary. Alternatively, if the Court decides to enter an order enjoining the Defendant, R & L Trucking Co., Inc. or any of its officers, directors or principals from collecting and spending the proceeds of any accounts receivable outstanding at this time, then the bank would suggest that the money from the receivables be interplead or deposited with the Clerk of this Court pending further order of the Court. That way, the Defendant will eventually get any and all monies collected in the event its arguments prevail. The bank does not believe that it should be required to post a bond for simply asking that the Defendant be required to do what the Defendant has contractually agreed to do. Irrespective, the bank is prepared to file a bond in an amount that this Court deems appropriate. Since the receivables, according to the Defendant's own exhibit, have declined to approximately $48,000.00, the bank would contend that a bond no greater than $50,000.00 should be required from the Court under the circumstances.

## 5. CONCLUSION

Unquestionably, a default has occurred in the loans between Plaintiff and R & L Trucking Co., Inc. To suggest otherwise, flies in the face of the clear unambiguous language of the various loan documents. Unquestionably, the amount of account receivables has, according to the corporate records of R & L Trucking Co., Inc., declined in some ten (10) months from $535,000.00 to $48,000.00. There is every reason to believe but for the intervention of this Court there will be further diminution of the remaining receivables. Finally, Plaintiff has cited this Court ample legal authority for this Court to rule upon Plaintiff's request for injunctive relief.

RESPECTFULLY SUBMITTED, this the 11th day of October 2005.

/s/ Charles N. Parnell, III
CHARLES N. PARNELL, III
CO-COUNSEL FOR PLAINTIFF
ATTORNEY CODE: PAR016

OF COUNSEL:
PARNELL & CRUM, P.A.
PO BOX 2189
MONTGOMERY, ALABAMA 36102-2189
334/832-4200

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion upon the below listed party by placing a copy of same in the United States Mail, postage prepaid and properly addressed this the 11th day of October, 2005.

/s/ Charles N. Parnell, III
OF COUNSEL

Davis B. Whittelsey, Esq.
Whittelsey, Whittelsey & Poole, P.C.
P.O. Box 106
Opelika, AL 36803-0106