# EXHIBIT 2

# MULTIPURPOSE NOTE AND SECURITY AGREEMENT

| Officer No. | RCW |
|---|---|
| Cust No. | 0018198 |
| Loan No. | 20018099 |
| Renewal of | |
| Date | April 25, 2002 |
| Loan Amount | $500,000.00 |
| Maturity Date | April 25, 2003 |

**Borrower:** I, We, and My Means Each Borrower Below, Jointly and Severally
**Lender:** Frontier National Bank and/or its loans, its Successors and Assigns

R & L Trucking Co., Inc.
2405 South Uniroyal Road
Opelika, AL 36801
B1 63-0567146 HP (334)-745-5791

Frontier National Bank Auburn Office
P O Box 2829
1678 South College Street
Auburn, AL 36831-2829
(334)-821-6455

**NOTE:** I promise to pay to you, or your order, at your address above, the principal sum of: Five Hundred Thousand and 00/100 Dollars ($ $500,000.00)

together with interest at the rate of interest provided for hereinafter.

- [ ] **Single Advance:** I have received all of this principal sum. No additional advances will be made under this note.
- [X] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. As of this date I have received the amount of $314,572.21 and future principal advances are contemplated.
  - [X] **Conditions:** The conditions for future advances are As approved by Lender upon acceptable Borrowing Base.
  - [X] **Open-End Credit:** You and I agree that I can borrow up to the maximum amount of principal more than one time. This option is subject to all other conditions and expires no later than April 25, 2003
  - [ ] **Closed-End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**THE PURPOSE OF THE LOAN IS:** working capital line of credit

**INTEREST:** Interest accrues on a 360 Day basis.

I agree to pay interest on the principal balance owing from time to time as stated below.
- [ ] **Fixed Rate:** I agree to pay interest at the fixed, simple rate of ___ % per year.
- [X] **Variable Rate:** I agree to pay interest at the initial simple rate of 6.500 % per year. This rate may change as stated below:
  - [ ] At the discretion of the Lender. [X] Upon changes in the Index Rate. [ ] Upon other conditions (describe).
- [X] **Index Rate:** The future rate will be .500 Above the following index rate: Frontier National Bank Base Rate
- [X] **Frequency and Timing:** The rate may change as often as daily
  - A change in the interest rate will take effect on the same date the rate changes
- [ ] **Limitations:** The rate on this note will not at any time (and no matter what happens to any index rate used) go above or below these limits:
  - [ ] **Maximum Rate:** The rate will not go above ___.
    - [ ] The highest allowable rate for this type of loan as determined by applicable state and federal law.
  - [ ] **Minimum Rate:** The rate will not go below ___. [ ] There is no minimum rate.

Any increase in the interest rate will result in changes in the form of:
[ ] More payments of the same amount. [X] Higher amount of payments. [ ] A larger payment amount at maturity.

**Post-Maturity Interest** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues prior to maturity, unless a specific post-maturity interest rate is agreed to in the next sentence.
- [ ] If checked, interest will accrue at the rate of ___ % per year on the balance of this note not paid at maturity, including maturity by acceleration.
- [X] If checked, I agree to pay a minimum **FINANCE CHARGE** of $ 10.00 if I pay this loan before you have earned that much in **FINANCE CHARGES**

**Delinquency and Default:** I agree to pay the costs you incur to collect this note in the event of my default, including your attorney fees.
- [ ] If checked, I agree to pay an interest surcharge equal to 6% of that part of the amount financed which does not exceed $2,000. If I prepay the amounts I owe under this note in full, I may be entitled to a refund of part of the interest surcharge in accordance with applicable law.
- [X] If checked, I agree to pay a late charge on any payment made more than 10 days after it is due equal to 5.00 % of the amount of the scheduled payment or $10.00, whichever is greater, not to exceed $100.00.
- [X] **Additional Charges:** In addition to interest, I [ ] have paid [X] agree to pay the following additional charges. Origination Fee = $2,500 UCC-1 Fee = $20, UCC-3 Fee = $10

**Payments:** I agree to pay this note as follows:
This note is payable in 11 payments of all accrued interest monthly beginning May 25, 2002, a final payment of $502,798.61 e plus all accrued interest shall be due and payable on April 25, 2003. e means estimated **THIS IS A VARIABLE RATE LOAN. SEE NOTE FOR A DESCRIPTION OF HOW YOUR LOAN TERMS AND PAYMENTS MAY CHANGE.**

**Additional Terms:** Loan #20018099 is cross collateralized with Loan #20018107 and Loan #20018081

- [X] **Due on Demand**
- [X] If checked this is a purchase money loan. You may include the name of the seller on the check or draft for this loan.

**Security:** I grant you a security interest in the following:
(1) any property of mine, whether I own it now or in the future, which is in your possession (This includes, but is not limited to, property I give you for safekeeping, collection or exchange, and all dividends and distributions from property.);
(2) the property described below, together with all parts, accessories, repairs, improvements and accessions to the property, and all proceeds and products from the property.

- [ ] If checked, this note is not further secured by any contemporaneous agreement (except for (1) and (2) of this section).
- [X] **Inventory:** All inventory wherever it is located which I own now or in the future, which I will sell or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.
- [X] **Equipment:** All equipment which I own now or may own in the future including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, and parts and tools. Any equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.
- [ ] **Farm Products:** All farm products which I own now or may own in the future including, but not limited to: (a) all poultry and livestock and their young, along with their products and produce; (b) all crops, annual or perennial, and all products of the crops; and (c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.
- [X] **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now or may have in the future to the payment of money including, but not limited to: (a) payment for goods sold or leased or for services rendered, whether or not I have earned such payment by performance; and (b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable. The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.
- [X] **General Intangibles:** All general intangibles I own in the future including, but not limited to, tax refunds, applications or patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.
- [ ] **Government Payments and Programs:** All payments, including production Flexibility Contract payments or benefits, accounts, general intangibles, or other benefits (including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance payments, diversion payments, and conservation reserve payments) in which I now have and in the future may have any rights or interest and which arise under or as a result of any preexisting, current or future Federal or state governmental program (including, but not limited to, all programs administered by the Commodity Credit Corporation and the ASCS, now sometimes known as Farm Service Agency.)
- [X] **Other:** Described as follows:
All debtor's inventory of every kind, type or description, whether now owned or hereafter acquired, including returned or repossessed goods, and any chattel paper or accounts arising from the sale or lease of inventory. All debtor's accounts, whether now existing or hereafter arising or acquired, whether or not earned by performance; all chattel paper owned by Debtor arising from conversion of accounts, and all accounts hereafter acquired by Debtor, as well as returned or repossessed goods. 2000 share(s) of EBA BANCSHARES, INC. common/preferred stock evidenced by certificate number 77. 2000 share(s) of EBA BANCSHARES, INC. common/preferred stock evidenced by certificate number 107.

- [X] If checked, this note is secured by a separate UCC dated April 25, 2002
Description of real estate if the above property is crops, timber, minerals (including oil or gas) or fixtures:

| Name of record owner, if not me: ___ | Any person who signs within this box does so to give you a security interest in the property described above. This person does not promise to pay the note. |
|---|---|
| [ ] If checked, this security agreement should be filed in the real estate records. | Date |

**BORROWER-I** ACKNOWLEDGE RECEIPT OF A COPY OF THIS NOTE AND AGREE TO THE TERMS AND CONDITIONS CONTAINED ON THIS PAGE AND ON PAGE 2 OF THIS NOTE.
**CO-SIGNER-I** UNDERSTAND THAT I HAVE FULL LIABILITY AND RESPONSIBILITY TO PAY THIS CONTRACT. YOU DON'T HAVE TO MAKE ANY DEMANDS ON ANY OTHER PERSON SIGNING THIS CONTRACT OR TAKE STEPS TO REPOSSESS ANY COLLATERAL BEFORE YOU ASK ME TO REPAY. I HAVE READ AND UNDERSTAND THIS ENTIRE CONTRACT.
**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

| BORROWER R & L Trucking Co., Inc. | DATE | BORROWER | DATE |
|---|---|---|---|
| BY: Stanley R. Melton, IV, President | 04/25/2002 | | |
| BORROWER | DATE | BORROWER | DATE |
| CO-SIGNER | DATE | CO-SIGNER | DATE |

FROBE04252002014338P   PAGE 1 OF 2   ALMPN Rev. (12/29/99)

I agree and promise as follows:
1. ADDITIONAL SECURITY AND INDEBTEDNESS: In addition to the collateral described in this agreement, before this note is secured by any replacements, accessions, products or proceeds including the proceeds of any insurance payable as a result of loss or damage to the collateral, and any similar after-acquired collateral. However, the security interest shall not attach to household goods not purchased with the proceeds of this loan or to other after-acquired consumer goods, with the exception of accessions, unless such after-acquired consumer goods are acquired within twenty (20) days after you make this loan. Unless the collateral consists of household goods, the security interest created hereby secures the prompt repayment of all my present and future obligations to you, including, but not limited to, obligations arising as a result of any future advances, overdrafts, or guarantees, or any expenses or costs incurred by you in accordance with this note, the security agreement contained herein, or any other agreement I have entered into with you guarantees, or any, expenses or costs incurred by you in accordance with this note, the security agreement contained herein, or any other agreement, I have entered into with you.
2. WARRANTY OF TITLE: I warrant to you that I own the collateral free and clear of all liens or security interests, other than the security interest created hereunder and that I will defend the collateral against any asserted claims or demands by other parties.
3. PRESERVATION OF COLLATERAL: I will preserve and maintain the collateral and keep the collateral in good condition and repair and will allow you to inspect the collateral at any time.
4. TAXES, ETC.: I will pay all taxes and other encumbrances on the collateral promptly, and I will otherwise maintain the collateral free and clear of any liens, encumbrances or other security interests.
5. SALE, ETC. OF COLLATERAL: I will not sell, convey, lease or otherwise transfer or grant a security interest in the collateral or any part of it without first obtaining written consent from you. Any waiver of your right to object to an unauthorized sale or transfer shall not constitute a waiver with respect to any subsequent unauthorized sale or transfer.
6. INSURANCE: I agree to maintain insurance against loss or damage to the collateral in form, amounts, coverages, and basis reasonably acceptable to you and issued by one or more companies reasonably acceptable to you. You will be designated as loss payee on all insurance policies, and I will promptly furnish you with insurance certificates or policies in form satisfactory to you, including stipulations that coverages will not be cancelled or diminished without at least 10 days prior written notice to you. I understand that I have the option of providing any insurance required under this note through an existing policy or a policy independently obtained and paid for by me, subject to your right for reasonable cause to decline any insurance so provided. If I at any time fail to obtain or maintain any insurance required under this note, you may (but shall not be obligated to) obtain such insurance as you deem appropriate, in single or dual interest form at your option. I hereby appoint you as my attorney-in-fact to endorse any insurance proceeds or refund checks in order to collect the amount due on those checks.
7. ACCOUNTS AS COLLATERAL: If I have given you a security interest in my accounts receivable, I agree not to settle or compromise any account for less than the full amount of that account without first obtaining your written consent.
I agree to collect my accounts receivable only until you instruct me to do otherwise. I agree to keep the proceeds of all accounts receivable and any goods returned to me in trust for your benefit, and I agree not to commingle them with any other accounts or property of mine. Upon your request, I agree to remit those proceeds to you.
8. INVENTORY AS COLLATERAL: If I have given you a security interest in my inventory, I agree to dispose of it only in the ordinary course of business for the fair market value of the property, or for some other price that we have mutually agreed upon.
9. FARM PRODUCTS AS COLLATERAL: If I have given you a security interest in my farm products, I agree to provide you with a written list of the buyers, commission merchants or selling agents to or through whom I may sell those farm products. The terms used in this paragraph shall have the meaning attributed to them under the Food Security Act of 1985.
10. REMEDIES UNDER THE SECURITY AGREEMENT: You have the following rights under this Security Agreement:
(1) You may notify account debtors of your security interest in my accounts receivable and direct the account debtor to remit to you or someone else that you designate, rather than to me; you may endorse any checks or other items received from those account debtors;
(2) You may note the fact of your security interest in the collateral on the face of any chattel paper or instruments covered by this or any other security agreement I have signed with you;
(3) With respect to any collateral covered hereby, you may demand, collect, endorse, receive, give receipt for, compromise, settle and handle any suits or other proceedings involving the collateral
(4) You may take any steps you feel necessary in order to take possession of or protect the collateral, including performing any part of a contract or endorsing that contract in my name; and
(5) You may make any necessary entries to my business records showing the existence of the security interest.
11. PAYMENTS MADE BY YOU: If I fail (a) to keep the collateral free of all taxes, liens, security interests, encumbrances, and other claims; (b) to provide required insurance; or (c) to make repairs to the collateral, you may (but are not obligated to) do so. All expenses incurred or paid by you for such purposes will then bear interest at the rate charged under the note from the date incurred or paid by you to the date of repayment by me. All such expenses will become a part of my debt owed to you and, at your option, will (a) be payable on demand, (b) be added to the balance of the note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the note, or (c) subject to applicable law regarding the right to refinance scheduled payments, be treated as a balloon payment that will be due and payable at the note's maturity. The collateral also will secure payment of these amounts.
12. PURCHASE MONEY SECURITY INTEREST: With respect to purchase money security interest arising under this security agreement:
(1) Payments made on non-purchase money loans secured by this agreement will not be deemed applicable to any purchase money loans, and
(2) Payments made on any purchase money loan will be applied first to any non-purchase money portion of said loan, with the remaining balance to be applied to the purchase money obligations in the order in which the items of collateral were acquired. A purchase money loan means a loan used in whole or in part to acquire the collateral which secures the loan and any extension, renewal, consolidation or refinancings of such loans.
13. REMEDIES UNDER THE SECURITY AGREEMENT: I will be in default under the terms of the security agreement if I default under the terms of any note that this agreement secures or if I fail to keep any provision contained in this agreement. If I default, you shall have all of the rights and remedies available to a secured creditor under the Alabama Uniform Commercial Code. I will be obligated to make the property or collateral available to you at a reasonably convenient place and time. I agree that you are then authorized to take possession of the collateral and sell it as provided under the terms of the Alabama Uniform Commercial Code. I agree that written notice sent to my address on the face of the note by first class mail ten (10) days in advance of any such sale will be reasonable notice.
14. FILING: A carbon, photographic or other reproduction of this agreement may be used as a financing statement.

## ADDITIONAL TERMS OF THE NOTE

I also agree and promise as follows:
1. PAYMENTS: Payments may be made on any of your business days at any facilities that accept payments. Payments received after a designated deadline determined by you from time to time on any business day may be considered as being made the following business day. If my payment is due on the 29th, 30th, or 31st of a month that does not have that many days, then my payment will be due on the last day of that month. I agree to make all payments in collected funds, which you may apply in the following order; (a) current finance charges accrued to the date of payment and deferred finance charges; (b) principal; and (c) late and other charges. When partial payments are made, the interest due is first to be paid and the balance applied to the payment of the principal. If I make a partial prepayment of the indebtedness due under this note, it will not relieve me of my obligation to make my regular monthly payments as and when they become due until my indebtedness hereunder is paid in full.
2. RENEWALS OR EXTENSIONS: I agree that you may renew or extend the maturity of this note one or more times, in your sole discretion, without affecting my liability or that of any other party responsible for the repayment of this note, and I further agree that you may renew or extend the maturity of this note without in any way affecting your right to or lien upon any property given as collateral for this note.
3. INDEX RATE: If the interest rate on this note is established at a rate which varies with respect to an index rate you establish, that index rate will determine the rate on this note. I understand that the index rate is not necessarily the lowest rate that you charge on your loans. I also understand that under no circumstances will the interest rate charged on this note exceed the maximum rate allowed by law.
4. SINGLE ADVANCE LOANS: If this loan is made as a single advance, that one advance is the only advance anticipated. However, you may add any amounts to the principal balance of this note to the extent that those amounts represent payments made as provided in the paragraph above entitled "PAYMENTS MADE BY YOU" or as otherwise provided for herein or in any other agreement I have made with you.
5. MULTIPLE ADVANCE LOANS: If this loan is to be made in multiple advances, you and I anticipate that more than one advance will be made.
On extensions of closed-end credit, repayments of a portion on the principal balance of the note will not enable me to obtain additional credit.
On extensions of open-end credit, repayment of a portion on the principal balance of the note will entitle me to obtain additional credit, unless the open-end credit commitment evidenced by this note has expired or has been terminated by you. You will not be obligated to make an advance to the extent that such an advance would cause the unpaid principal balance of the note to exceed the maximum face amount of the note. You have no obligation to make such an advance, even if you occasionally choose to do so.
6. INTEREST: Each advance made under the terms of this note will earn interest only from the date that I receive the advance. The interest rate provided for in this note at any point in time will apply to the entire principal balance outstanding at the time.
7. POST MATURITY RATE: For purposes of this note the term "maturity" shall mean the following:
(1) If the note is a "demand" note, the date you make your demand or the date that payment of the note is accelerated by you, whichever is earlier;
(2) If the note is a "demand" note, with a stated alternate maturity date, the date of your demand or the alternative maturity date or the date that you accelerate payment of the note, whichever date is earlier; or
(3) In all other cases, the date set for the last regularly scheduled payment of principal or the date that you accelerate payment of the note, whichever date is earlier.
8. SET-OFF: You have the right to set-off my deposit accounts and any other rights that I may have to receive the payment of money from you. You may exercise your right of set-off without notice to me and without regard to the type or value of collateral or the existence of any guaranty for or other agreement to pay this note.
You will not be responsible for the dishonor of any check when that dishonor occurs as a result of your exercise of the right of set-off against my account.
9. DEFAULT: I will be in default if any of the following events occurs:
(1) I fail to make a required payment when due;
(2) I breach any promise I have made to you under the terms of this note, the security agreement (if applicable) or any other loan or agreement with you;
(3) Any representation, warranty, promise or statement that I have made to you proves to be (or at the time it was made or given was) materially false or incorrect;
(4) I die, become insolvent, or initiate bankruptcy or similar proceedings, or am adjudged a bankrupt;
(5) Any of my property in which you have a lien or security interest is attached or otherwise taken by another creditor, including any garnishment of my accounts with you;
(6) I fail to maintain required insurance covering the collateral;
(7) The maturity of any indebtedness I owe to others is accelerated as a result of the occurrence of a default under this or any other agreement;
(8) You at any time believe that the prospect for repayment of any portion of the indebtedness secured hereby is significantly impaired;
(9) Any legal entity (such as a partnership or corporation) that has agreed to pay this note merges, dissolves, reorganizes, or ends its business or existence.
10. LENDER'S REMEDIES: Upon default, you may at your option, do one or more of the following:
(1) You may, without notice, accelerate the maturity of this note and require that all unpaid charges, interest and principal balances be immediately due and payable;
(2) You may exercise your right of set-off against any right I have to receive payment of money from you;
(3) You may exercise any rights or remedies you have under any other agreement which secures this note;
(4) You may demand additional security or obligors to insure repayment of this note;
(5) You may exercise all the rights of a secured party under the Alabama Uniform Commercial Code, and you may make use of any other remedy available to you under any other state or federal statute.
(6) Your rights and remedies under this note, under other agreements between you and me, and under law, are cumulative and not exclusive.
11. WAIVER AND CONSENT: I hereby waive presentment, demand for payment, protest and notice of dishonor, and I consent to any extension you may grant either before or after maturity of this note. I consent to any substitution, release or non-perfection of security interest in the collateral and to release or covenant not to sue of any co- signer or guarantor. No waiver of a default shall be deemed a waiver of any other or later default. If under the terms of this security agreement a lien would be created in a principal dwelling used by me or any other person as a home, you waive the security interest so created unless you have given an appropriate opportunity to rescind and the owner of the property has not exercised that right.
12. COLLECTION COSTS AND ATTORNEY'S FEES: If I am in default and you have to sue or take other steps to collect or secure this note, I agree to pay your reasonable costs. If the original amount financed is greater than $300 and if you refer this note to an attorney who is not your salaried employee, I agree that these costs include a reasonable attorney's fee. If this loan is primarily for a consumer's personal, family, or household use, a reasonable attorney's fee will not exceed 15% of the unpaid debt.
13. GOVERNING LAW: This note shall be governed by the laws of the State of Alabama.
14. RETURNED CHECK CHARGE: I agree to pay a charge of not more than the maximum amount permissible under applicable law if any instrument I give to you to pay this note is dishonored.
15. MAXIMUM INTEREST RATE: In the event the interest rate as determined under this note exceeds the maximum rate of interest permitted by law, then the interest rate shall be the maximum rate so permitted Any amount received by you that if applied to the payment of interest would exceed the maximum rate of interest shall be used to reduce the principal balance of the loan remaining.
16. INSURANCE YOU BUY OR PROVIDE: I agree that any insurance you buy or provide, whether credit, property or other types or insurance, may be bought through an agency or company, which may be affiliated with you. The premium may be substantially higher than insurance I could buy myself. Any agency or company, including one affiliated with you, may receive a fee based upon the amount of the premium. You may also benefit from buying or providing this insurance. I CONSENT TO THIS. Insurance requested by me in connection with this loan may be subject to approval by the insurer.
17. FINANCIAL STATEMENTS: Upon your request, I agree to provide you with financial statements and any other financial information that you may deem necessary. I warrant to you that all financial statements and information provided and will be accurate, correct and complete.
18. MY COMPLIANCE: I agree that if you do not insist upon strict compliance with the terms of this note, you shall not have waived or otherwise given up your right to insist upon my strict compliance at a later date. Time is of the essence in my performance of this note.
19. ENTIRE AGREEMENT: I agree that this note plus any other documents that I signed when I signed this instrument contain the entire agreement between you and me. I agree that you have not made any promises or representations to me that are not stated in this note or those other documents.
20. UNENFORCEABLE PROVISIONS: If any section of this note is not enforceable, that will not affect the validity of any other section. However, the enactment or expiration of any application laws has the effect of rendering any provision of this note unenforceable according to its terms, at your option, you may choose to declare this loan due at once.
21. HEADINGS: The headings in this note are inserted for convenience only and do not control the meaning or effect of any of its terms.
22. SUCCESSORS AND ASSIGNS; AMENDMENTS: This note shall bind my heirs, successors and assigns, but I may not assign or transfer my obligations under this instrument without your prior written consent. No amendment or modification of any provision of this note shall be effective unless in writing signed by both you and me.

GUARANTEE: By signing below I unconditionally guarantee the payment of the note and any amounts agreed to be paid under the terms of the security agreement. I also agree that all of the terms of the note and, to the extent applicable, the security agreement will apply to me. CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| NAME Stanley R. Melton IV | NAME SRM Financial, Inc. |
|---|---|
| X | X |

NOTICE TO THE CO-SIGNER
You (the co-signer) are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, and reimburse Lender for advances it makes to protect collateral, such as for taxes and insurance premiums, all of which increase this amount. The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.
This notice is not the contract that makes you liable for the debt. CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

| NAME | NAME |
|---|---|
| X | X |